2002-NMCA-098

54 P.3d 548

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Jesus Gabriel BARRERA,**
**Defendant–Appellant.**

**No. 22,230.**

Court of Appeals of New Mexico.

June 27, 2002.

Certiorari Denied, No. 27,602,
Sept. 9, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Elizabeth Blaisdell, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} This appeal involves a husband convicted of false imprisonment of his wife. The sole issue is whether the State presented sufficient evidence to prove Defendant knew he had no authority to restrain or confine his wife. We determine sufficient evidence exists and affirm the conviction.

## BACKGROUND

{2} "[W]e resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary."

*State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{3} Defendant's wife (Victim), seventeen years old at trial time, gave birth to their daughter in November 1999. Between 10 and 11 p.m. on January 5, 2000, Defendant wanted to engage in sexual intercourse. Victim declined because she was still sore and recovering from the birth; also, her physician had advised her to refrain from sexual activity. Defendant knew this. She told Defendant that having sex hurt her and caused nausea. Defendant pulled Victim off the bed onto the floor, hit her in the head with his fists, and kicked her in the eye. He said he hated her. When she yelled for help, Defendant covered her mouth with his hand.

{4} Defendant was angry. Moments later Defendant slapped her when she declined his offer to assist in cleaning off her blood or tears. He still wanted to have sex. Victim did not want to, but did so because she was afraid he would do something to her and the baby.

{5} Victim asked Defendant two or three times during these events to let her go next door to Lupita's, her sister's godmother's, home. Defendant told her "no." Victim was afraid to try to leave with the baby because she feared Defendant "would do something to the baby or something." Victim testified she was unable to "walk right" and "was afraid he would catch us." While Defendant was at work the next morning, Victim went to Lupita's home. Ultimately she met with a sheriff's office investigator who lived nearby and told him what happened.

{6} Defendant admitted he threw his wife on the floor and hit her when she did not want to have sexual intercourse. He admitted he told her she could not go to Lupita's. When asked whether the reason he did not want Victim going to Lupita's was because he did not want Lupita to see what he had done to Victim, Defendant testified he did not even think of that—he just did not want her to go, he did not want her to leave him there.

{7} Defendant was charged with criminal sexual penetration, false imprisonment, and aggravated battery on a household member. The jury convicted Defendant of the latter

two. A mistrial was declared on the sexual penetration charge because the jury could not agree on a verdict and the State filed a *nolle prosequi* on that count. Defendant appeals the false imprisonment conviction.

## DISCUSSION

{8} We review the evidence in order to ensure that a rational jury could have found the essential facts for conviction beyond a reasonable doubt. *State v. Varela*, 1999–NMSC–045, ¶ 46, 128 N.M. 454, 993 P.2d 1280.

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt. Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion. The jury [is] not obliged to accept defendant's version of the events.

*State v. Muise*, 103 N.M. 382, 388, 707 P.2d 1192, 1198 (Ct.App.1985) (citations omitted).

{9} "False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." NMSA 1978, § 30–4–3 (1963). The jury was instructed under UJI 14–401 NMRA 2002 that conviction required these elements: "1. The defendant restrained or confined [Victim] against her will; 2. The defendant knew that he had no authority to restrain or confine [Victim]." Defendant concedes that the jury could infer restraint from the evidence. This was a concession that Victim wanted to leave but did not feel free to do so because Defendant's words, acts, or gestures instilled a reasonable fear in her that prevented her from leaving. *See Muise*, 103 N.M. at 388, 707 P.2d at 1198 (addressing the evidence necessary to establish the element of restraint). Defendant agrees that the State met its burden as to the element of restraint.

■ {10} Defendant attacks only the State's proof on the second element, knowledge of lack of authority. Defendant contends the evidence was insufficient to prove he knew he had no authority to restrain Victim. The crux of Defendant's argument is that the evidence of Victim asking permission to leave supports an inference that Victim and Defendant both believed he had authority to deny permission, and that no contrary evidence exists to support the opposite inference that Defendant knew he did not have the authority to restrain Victim. Defendant states that "[t]he fact [Victim] was [seventeen] years old at the time of this incident also supports the notion that asking for permission and granting permission were a regular part of this marriage." He argues that the marital balance of power is defined by the spouses, and he suggests we not presume that Defendant knew he had no authority when they both acted on the belief that he did have the authority to grant and withhold permission to leave the home. Assuming, without deciding, that the evidence could support such an inference, the evidence could also support a contrary inference that Defendant likely knew he did not have the authority to deny Victim permission to leave. We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result.

■ {11} New Mexico cases decided under Section 30–4–3 do not address the knowledge requirement. The cases are nevertheless instructive. In the cases, the defendants' actions accompanying the restraints were themselves unlawful. *See State v. Ibarra*, 116 N.M. 486, 864 P.2d 302 (Ct.App.1993) (false imprisonment during armed robbery); *State v. Gibson*, 113 N.M. 547, 828 P.2d 980 (Ct.App.1992) (restraint of peace officer during inmates' escape from prison); *State v. Bachicha*, 111 N.M. 601, 808 P.2d 51 (Ct.App.1991) (restraint with aggravated assault); *State v. Moore*, 109 N.M. 119, 782 P.2d 91 (Ct.App.1989) (restraint during armed robbery), *overruled on other grounds by State v. Salgado*, 112 N.M. 537, 817 P.2d 730 (Ct.App.1991); *Muise*, 103 N.M. 382, 707 P.2d 1192 (restraint and battery of a school bus driver); *cf. State v. Corneau*, 109 N.M. 81, 87, 781 P.2d 1159, 1165 (Ct.App.1989) (distinguishing restraint before or after criminal sexual penetration from the restraint necessarily involved in every act of criminal sexual penetration). It is apparent from these cases that at least

when a defendant's underlying acts are unlawful, it may be inferred that the defendant knows, too, that he has no lawful authority to restrain the victim in the commission of those unlawful acts.

{12} Defendant started the events in anger and with unlawful conduct—domestic violence involving aggravated battery—that gave rise to the fear that prevented Victim from leaving the home. While the denial of permission to leave may not have assisted Defendant to carry out his aggravated battery, Defendant's continuing denial of permission set the stage for him to engage in his ongoing, improper conduct and kept Victim in a state of fear and fearful submission. Looking at the circumstances from this point of view, the jury could reasonably have concluded that Defendant's first unlawful and then improper, if not intimidating, actions were a continuing force not only to obtain Victim's submission, but to assure no one saw how Defendant had physically abused Victim.

 {13} We hold that knowledge of lack of authority under the circumstances in this case could reasonably be inferred from the circumstances. Defendant had no lawful authority to engage in domestic violence. Defendant's continuing abusive behavior was inseparable from his restraint of Victim against her will. From start to finish, nothing about the circumstances or about Defendant's actions permits an inference that he was acting pursuant to a valid, recognized, and lawful marital authority to act for his spouse in her best interests. At a minimum, Defendant's restraint of Victim in conjunction with his commission of criminal acts of violence permit a reasonable jury inference that Defendant knew he had no such authority to restrain Victim.

{14} Further, in defense counsel's attempt during examination of Defendant to show Defendant as mild and penitent following the beating, Defendant stated, "No. I never said anything to her. I never said to her that there was anything she couldn't do or anything." He knew that he would be "in trouble" for hitting his wife. He responded "no" to his counsel's question whether he did "anything that night besides saying no to [his] wife that prevented her from walking out the door and going to [Lupita's], or going to the police officer's house." He testified that he told her "no" because he did not "want her to leave [him] there." Defendant stated nothing about a belief he had authority to deny Victim permission to leave. On the contrary, his testimony could be viewed as indicating he may not have believed at the time that he had such authority. Even were Defendant's testimony to have given him a basis on which to argue that he thought he had lawful authority, the jury had the prerogative to reject any such subjective belief. *See Muise,* 103 N.M. at 388, 707 P.2d at 1198.

## CONCLUSION

{15} Sufficient evidence supported the element of knowledge of lack of authority. We affirm the false imprisonment conviction.

{16} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge and CELIA FOY CASTILLO, Judge.