This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36670**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BERNARDO BACA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Bernardo Baca appeals his convictions for trafficking of a controlled substance (methamphetamine) in violation of NMSA 1978, Section 30-31-20(A)(2)(c) (2006); distribution of marijuana in violation of NMSA 1978, Section 30-31-22(A)(1)(a) (2011); tampering with evidence in violation of NMSA 1978, Section 30-22-5(A), (B)(2) (2003); and resisting, evading, or obstructing an officer in violation of NMSA 1978, Section 30-22-1(B) (1981). Defendant argues that (1) there was insufficient evidence to

support his convictions; (2) the district court erred by allowing Investigator Bessette to testify regarding alleged coded language in telephone calls; (3) the district court erred by not granting a mistrial sua sponte after striking evidence regarding a prior bad act and giving a curative instruction; (4) the district court erred by allowing the State to use a demonstrative transcript of recorded telephone calls identifying Defendant and the other caller by name; and (5) cumulative error requires reversal. We affirm Defendant's convictions for trafficking, distribution, and tampering with evidence, but we reverse his conviction for resisting, evading, or obstructing an officer.

## DISCUSSION[1]

### I.        Sufficiency of the Evidence

**{2}**      Defendant argues that the evidence is insufficient to support his convictions for trafficking a controlled substance (methamphetamine) and distributing marijuana; tampering with evidence; and resisting, evading, or obstructing an officer. We disagree with the first two arguments but agree with the last.

**{3}**      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

### A.        Sufficient Evidence Supports Defendant's Convictions for Trafficking Methamphetamine and Distributing Marijuana

**{4}**      For Count 1, the jury was instructed, consistent with UJI 14-3110 NMRA, that in order to find Defendant guilty of trafficking methamphetamine, the State was required to prove beyond a reasonable doubt that "[(1) D]efendant transferred or attempted to transfer methamphetamine to another; [(2) D]efendant knew it was methamphetamine

1Because the parties are familiar with the factual background, this memorandum opinion does not include a background section. We describe the pertinent facts in the discussion section.

or believed it to be methamphetamine; [and (3) t]his happened in New Mexico on or about the 3rd day of May, 2016."

{5}    For Count 2, the jury was instructed, consistent with UJI 14-3103 NMRA, that, in order to find Defendant guilty of distribution of marijuana or synthetic cannabinoids, the State had to prove beyond a reasonable doubt that "[(1) D]efendant transferred or attempted to transfer marijuana to another; [(2) D]efendant knew or believed it to be marijuana; [ and (3) t]his happened in New Mexico on or about the 3rd day of May, 2016."

{6}    At trial, Officer Padilla testified that he had been dispatched to 919 Mitchell Street on the night of May 3, 2016. Between 11:00 p.m. and midnight, near a dumpster in the alley directly behind that address (the dumpster alley), Padilla found two Allsup's taco sauce packets that had been opened and taped together with clear tape. The packets contained substances that the evidence showed were marijuana and methamphetamine. Sergeant Gurule testified that, in his thirteen years of working in law enforcement, this case was "one of the only instances that [he had] ever seen narcotics transported and packaged inside of a taco sauce package."

{7}    The dumpster alley is located one block north of the alley (the CCDC alley) running between Curry County Adult Detention Center (CCDC) and its annex, and Officer Padilla opined that the dumpster that the drugs were found close to was thirty-five to forty yards from CCDC. The State introduced audio recordings of two telephone conversations that occurred on May 3, 2016, between two people identified by Investigator Bessette as Defendant and Maria Olivas, an inmate at the CCDC at the time. Bessette discovered these two calls during his search of the CCDC phone system, with which he was familiar. Bessette testified that, in his experience, inmates always talk in code when drug drops are made, and he testified about the meaning of the coded language in the calls.

{8}    In the first phone call, which occurred at 7:00 p.m., Defendant said, "I'm en route right now." Olivas responded, "Okay, we're waiting for them to . . . [take] us to rec. I'm ready to go to rec." The State had previously introduced testimony that the CCDC alley was accessible to the public and that female inmates walked through the CCDC alley in order to reach the recreation or "rec" area. Less than a minute later, Defendant said, "I got myself a Allsup's burrito combo. . . . Ok? . . . You know I love picante sauce . . . taco sauce, ok? " Defendant then briefly left the conversation and, upon returning, said "It's there." Olivas responded, "Okay." Before the call ended about a minute later, Defendant added, "Alright, get it babe. Get it. Okay? . . . Do what I said." Bessette interpreted the statements from the first call as Defendant telling Olivas that he dropped the drugs in the CCDC alley and that she would find the drugs in taco sauce packets. He also understood the statement, "Get it. Okay?" to mean that Defendant had made the drop and Olivas should go pick up the drugs.

{9}    In the second phone call, which occurred at 9:12 p.m., Olivas said, "I wanted to let you know that we ain't still ain't been outside to . . . rec," and "if we don't go outside

by 10 o'clock then we ain't going outside." Defendant responded, "Ah, my God. . . . get on 'em, get on 'em, get on 'em." Olivas said, "So, I'm saying, like, if we don't go, go get it." Bessette interpreted the second conversation to mean that the women had not gone out for their recreation time and that, if they did not go by 10:00 p.m., then Defendant needed to retrieve the drugs from the CCDC alley.

**{10}** The State also presented video evidence of someone picking something up in the CCDC alley shortly after 10:00 p.m., according to the video time stamp. The same person then walks north in the CCDC alley towards the dumpster alley, where the drugs were eventually found. Police later observed a car leaving the dumpster alley and ultimately discovered that Defendant had been a passenger in that car.

**{11}** The record contains sufficient evidence that Defendant "transferred or attempted to transfer" methamphetamine and marijuana to Olivas. Based on Bessette's identification of Defendant and Olivas as the parties to the phone calls, the content of the phone calls, the video evidence of someone picking something up in the CCDC alley after 10:00 p.m., the discovery of taco sauce packets containing the drugs in the nearby dumpster alley, and Defendant's presence in the dumpster alley, the jury could have reasonably concluded that Defendant attempted to transfer drugs to Olivas. From this evidence, the jury could have inferred that either Defendant or someone working with him placed the drugs inside the taco sauce packets and placed the packets in the CCDC alley; that Defendant used partially coded language during the first recorded telephone call to inform Olivas that the drugs were in taco sauce packets that had been dropped off in the CCDC alley; that Defendant learned from Olivas during the second recorded call that, if she was not taken to recreation by 10:00 p.m., she would be unable to retrieve the taco sauce packets; and that the person in the video shortly after 10:00 p.m. was recovering the drugs from the CCDC alley. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 ("A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." (alterations, internal quotation marks, and citation omitted)).

**{12}** We conclude that sufficient evidence supports Defendant's convictions for trafficking of methamphetamine and distribution of marijuana.

## B. Sufficient Evidence Supports Defendant's Conviction for Tampering With Evidence

**{13}** Defendant argues that there is insufficient evidence to support his conviction for tampering with evidence. We disagree. To obtain a conviction for tampering with evidence under Section 30-22-5(A), the State must prove that a defendant "destroy[ed], chang[ed], hid[], plac[ed] or fabricat[ed]" the pertinent physical evidence. Here, the jury was instructed, consistent with UJI 14-2241 NMRA, that in order to find Defendant guilty of tampering with evidence, the State was required to prove beyond a reasonable doubt that "[(1) D]efendant hid narcotics; [(2) b]y doing so, [D]efendant intended to prevent the apprehension, prosecution, or conviction of himself for the crime of trafficking a

controlled substance; [and (3) t]his happened in New Mexico on or about the 3rd day of May, 2016." The jury was also instructed, consistent with UJI 14-2822 NMRA, that under a theory of accomplice liability, "[D]efendant [could] be found guilty of a crime even though he himself did not do the acts constituting the crime, if . . . [(1) D]efendant intended that the crime be committed; [(2) t]he crime was committed; [and (3) D]efendant helped, encouraged or caused the crime to be committed."

**{14}** There was sufficient evidence that Defendant or an accomplice hid the narcotics to prevent Defendant's apprehension, prosecution, or conviction. Sergeant Gurule testified that he saw a car—in which Defendant later admitted to Sergeant Gurule he had been a passenger—leaving the dumpster alley at a high rate of speed after dropping off another passenger. The police found the taco sauce packets containing the drugs in that alley after this encounter.[2] Photographs of the taco sauce packets introduced by the State show the packets in close proximity to a deodorant stick, cigarette butts, and other unremarkable pieces of litter near a dumpster. These images, the testimony regarding the packets' discovery, Defendant's presence in the alley, and the evidence of the circumstances surrounding the attempted drug transfer support a finding that Defendant or an accomplice hid the narcotics by camouflaging them among items of trash close to the dumpster.

**{15}** Having found that Defendant or his accomplice hid the drugs, the jury could reasonably have concluded that one or the other did so "intend[ing] to prevent [Defendant's] apprehension, prosecution, or conviction . . . [for] trafficking a controlled substance." The taped phone calls begin with an automated recording informing the parties to each call that the call "is subject to recording and monitoring." In the first call, Defendant informed Olivas that he was "en route" and, later, that "[i]t's there." In the second phone call, Olivas told Defendant to "go get it" if she was unable to go to rec by 10 o'clock. The video evidence shows someone picking something up in the CCDC alley and walking towards the dumpster alley after 10:00 p.m. Defendant admitted to being a passenger in the car that Officer Gurule saw in that alley, and Officer Gurule testified that, although it had been dropping off a passenger when he first saw it, the car "took off" as he approached. From this evidence, the jury could have inferred that Defendant or his accomplice hid the drugs after becoming aware of Officer Gurule's presence out of concern that Defendant would be apprehended for the aborted attempt to transfer drugs to Olivas.

**{16}** We are unpersuaded by Defendant's argument that the State only "establish[ed] an intent to remove the drugs from the alley *to avoid loss or waste*, [rather than] an intent to avoid apprehension." The jury was free to reject the inference Defendant seeks to draw from the evidence and to instead infer that Defendant hid the drug-filled taco sauce packets for the purpose of preventing apprehension. *State v. Barrera*, 2002-

---

2Defendant asserts that the State presented no evidence "temporally connecting" Defendant's presence in the dumpster alley with the hiding of the taco sauce packets. We disagree. The CCDC video shows someone picking up what the jury could have inferred were the drugs at issue after 10:00 p.m. It is clear from Officer Padilla's testimony that Padilla found the drugs after 11:00 p.m. And Sergeant Gurule testified that he had returned to the scene to participate in the narcotics investigation *after* locating and speaking to Defendant.

NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548 ("We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result."). We conclude that sufficient evidence supports Defendant's conviction for tampering with evidence.

## C. The Evidence Is Insufficient to Support Defendant's Conviction for Resisting, Evading, or Obstructing an Officer

**{17}** Defendant argues that the evidence was insufficient to sustain a conviction for resisting, evading, or obstructing an officer. We agree.

**{18}** Defendant was charged with resisting, resisting, evading, or obstructing an officer in contravention of Section 30-22-1(B). To obtain a conviction for violating that subsection of the statute, the State must prove (1) "that the officer was a peace officer in the lawful discharge of duty[;]" and (2) "that the defendant with the knowledge that the officer was attempting to apprehend or arrest the defendant," intentionally "fled, attempted to evade, or evaded the officer." *State v. Gutierrez*, 2007-NMSC-033, ¶ 27, 142 N.M. 1, 162 P.3d 156; *see also* § 30-22-1(B); *State v. Jimenez*, 2017-NMCA-039, ¶ 30, 392 P.3d 668. The district court accordingly instructed the jury, consistent with UJI 14-2215 NMRA, that in order to find Defendant guilty of resisting, evading, or obstructing an officer as charged in Count 4, the State was required to prove beyond a reasonable doubt the following elements of the crime:

> 1.      James Gurule was a peace officer in the lawful discharge of his duty;
>
> 2.      [D]efendant knew James Gurule was a peace officer[;]
>
> 3.      [D]efendant, *with the knowledge that James Gurule was attempting to apprehend or arrest* [D]efendant, fled, attempted to evade or evaded James Gurule;
>
> 4.      [t]his happened in New Mexico on or about the 3rd day of May, 2016.

(Emphasis added.) Because Defendant could not "know" of an attempt to apprehend or arrest him absent an actual attempt to do so, the third element of the instruction required the State to prove that Sergeant Gurule did, in fact, "attempt to apprehend or arrest" Defendant. Defendant asserts, and the State does not dispute, that there is no evidence that Sergeant Gurule attempted to arrest him. The State contends, however, that the evidence is sufficient to prove that Defendant evaded Sergeant Gurule while Sergeant Gurule was attempting to apprehend him by conducting an investigatory stop.

**{19}** Sergeant Gurule's testimony was the only evidence of Defendant's resisting, evading, or obstructing an officer introduced at trial. Gurule was called to the scene for a "prowlers in progress call" north of 801 Mitchell, near CCDC. Upon his arrival, Gurule

observed an older model sedan dropping someone off approximately one block away. The sedan left the alley "at a high rate of speed" as Gurule approached. Gurule testified that he "sped up to try and catch up to the vehicle as it was speeding away" eastbound on Ninth Street, but that it "disappeared" after turning left on Pile Street. Gurule did not testify that he engaged his emergency lights or siren, or otherwise communicated to the occupants of the vehicle in which Defendant was present that he wanted the vehicle to stop or that he wanted to apprehend Defendant. Gurule then found the car parked at 908 Pile Street, where he spoke with Defendant, who admitted that he had been a passenger in the car.

**{20}** This testimony is insufficient to prove beyond a reasonable doubt that Defendant knew Gurule was attempting to apprehend or arrest him. An officer's actions constitute an "attempt to apprehend" a defendant within the meaning of Section 30-22-1(B) only if they cross an objective threshold: they must "convey[] to a reasonable person that he [is] being ordered to restrict his movement[,]" *Gutierrez*, 2007-NMSC-033, ¶ 34 (internal quotation marks and citation omitted). From the evidence introduced at trial, we cannot say Gurule's actions would have conveyed that message to a reasonable person. Although Gurule sped up in an attempt to catch Defendant's car, there is no evidence that he at any time or in any way communicated his intent to perform a traffic or investigatory stop. We emphasize that the State did not provide any testimony that Gurule engaged his lights or sirens or that Gurule took any other action to indicate that the driver of the car in which Defendant was a passenger should stop or pull over.

**{21}** The State relies on Sergeant Gurule's testimony that, after his conversation with Defendant, Defendant had "brought it to light that they were trying to get away because the individual . . . who was driving the car didn't have registration on the vehicle and didn't want to get in trouble." However, because there was insufficient evidence that Gurule had actually "attempt[ed] to apprehend" Defendant within the meaning of the instruction, that statement could prove only that Defendant attempted to evade Gurule *before* Gurule could attempt to apprehend him. In other words, the evidence merely established that Defendant was concerned that Gurule *might* attempt to apprehend him. Consequently, the statement and the surrounding circumstances would not have allowed a reasonable jury to conclude that Defendant knew that Gurule was attempting to detain or arrest Defendant.

**{22}** We conclude that the evidence is insufficient to sustain Defendant's conviction for resisting, evading, or obstructing an officer.

## II. It Was Not Plain Error to Allow Bessette's Testimony Interpreting the Coded Language in the Phone Calls

**{23}** Defendant argues that plain error occurred when the district court permitted Investigator Bessette to interpret the coded language in the phone calls during his testimony. We disagree.

**{24}** We review unpreserved evidentiary arguments for plain error. *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056. For this Court to find plain error, we "must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). We "examine the alleged errors in the context of the testimony as a whole." *Id.* (internal quotation marks and citation omitted).

**{25}** Assuming without deciding that it was error to admit Bessette's interpretation testimony, the error was not plain. The jury could have independently interpreted the telephone conversations just as Bessette did based on the evidence, including that (1) Defendant mentioned sauce during a telephone conversation with Olivas; (2) in the second call, Olivas told Defendant that if she did not go to recreation by 10:00 p.m., she was not going to recreation; (3) the drugs were found in sauce packets, a unique type of packaging for drugs; and (4) Defendant admitted to being present in the car that departed the dumpster alley. The jury thus had ample evidence to convict Defendant without Bessette's additional testimony interpreting the phone calls. Under the facts of this case, the admission of Bessette's interpretation does not give us "grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted).

## III. The District Court's Failure to Order a Mistrial Sua Sponte Was Not Fundamental Error

**{26}** Defendant argues that the district court's failure to declare a mistrial sua sponte after striking testimony regarding a prior bad act and instructing the jury to disregard that testimony warrants reversal. We disagree.

**{27}** At trial, Captain LeClear testified that the CCDC alley is open to the public and that there had been previous attempts to smuggle items into CCDC by dropping them in the alley for pickup by detainees. The prosecutor then asked him whether "Olivas [had] ever been involved in any one of those incidents." LeClear answered that he "recall[ed] one specific" and, when asked about "the nature of that incident," testified that he "recall[ed that Defendant] had placed an item in the alleyway."

**{28}** Defense counsel objected on the ground that LeClear lacked personal knowledge, and the prosecutor replied that LeClear had "said he knew about the incident." The district court sustained the objection after LeClear testified that he had not discovered it himself. Defense counsel then moved to strike LeClear's testimony, and the district court issued an instruction in an attempt to cure any prejudice.

**{29}** Assuming for the sake of argument that the testimony at issue was, in fact, improper under Rule 11-404(B) NMRA and that the district court's curative instruction was inadequate to cure the resulting prejudice, we conclude that Defendant has provided us with no basis for reversing his convictions. At the outset, we decline the parties' invitation to review this issue under a plain error standard. Defendant is not challenging an unpreserved claim that the district court erroneously admitted testimony. *Cf. State v. Miera*, 2018-NMCA-020, ¶ 13, 413 P.3d 491 (recognizing that appellate

courts review unpreserved evidentiary questions for plain error). The district court *struck* the testimony at issue and instructed the jury to disregard it. As Defendant appears to acknowledge, the only additional remedy available to the district court was a mistrial. Because Defendant did not move for a mistrial in the district court, we treat Defendant's argument on appeal as an argument that fundamental error occurred when the district court did not declare a mistrial sua sponte. *See State v. Johnson*, 2010-NMSC-016, ¶ 53, 148 N.M. 50, 229 P.3d 523 (reviewing an issue for fundamental error where the defendant had not moved for a mistrial on that ground during trial).[3]

**{30}** "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Gallegos*, 2009-NMSC-017, ¶ 27, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). We will not uphold a conviction "if an error implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted).

**{31}** We cannot say that the district court's approach to curing any prejudice arising from the testimony in this case amounts to fundamental error. Our Supreme Court has recognized that "other-acts evidence, although logically relevant to show that the defendant committed the crime by acting consistently with his or her past conduct, is inadmissible because the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect." *State v. Gallegos*, 2007-NMSC-007, ¶ 21, 141 N.M. 185, 152 P.3d 828 (internal quotation marks and citation omitted). However, the testimony here was brief and isolated, and the district court instructed the jury to disregard what it understood to be the testimony promptly after sustaining Defendant's objection. On our review of the record as a whole, we do not believe that the district court's course of action—striking the testimony and giving a curative instruction, but not granting a mistrial sua sponte—resulted in "fundamental unfairness . . . that would undermine judicial integrity if left unchecked." *Barber*, 2004-NMSC-019, ¶ 18.

## IV. Use of the Demonstrative Transcript Was Not Reversible Error

**{32}** Defendant argues that the State's use of a demonstrative transcript for the jury to follow while the phone calls were played was reversible error because the transcript

---

3For the reasons explained, we conclude the fundamental error doctrine provides the standard of review applicable to the district court's failure to sua sponte declare a mistrial. However, the parties have briefed this appeal on the assumption that plain error review applied to the initial admission of LeClear's testimony and, although the difference is the source of some as-yet-unclarified confusion, *see generally State v. Bregar*, 2017-NMCA-028, ¶ 42, 390 P.3d 212, our Supreme Court has previously stated that the "predicate for review on the basis of plain error is less stringent than for fundamental error[,]" *State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. We therefore briefly note that our disposition on the merits of Defendant's claim of error would have been the same had we concluded that the plain error standard applied.

included Defendant and Olivas's names. We disagree. Through Bessette's testimony, the State adequately laid the foundation for Bessette's lay opinion that Olivas and Defendant were the people on the recorded phone calls. Because the inclusion of their names in the transcript was duplicative of lay opinion testimony properly admitted into evidence, we conclude that the inclusion of the names, if it was error at all, was harmless error. *See State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936 ("Non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." (emphasis, alteration, internal quotation marks, and citation omitted)).

## V.    Cumulative Error

**{33}**    Defendant's final argument is that cumulative error requires us to reverse. We disagree. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). "In New Mexico the doctrine of cumulative error is strictly applied." *State v. Stills*, 1998-NMSC-009, ¶ 51, 125 N.M. 66, 957 P.2d 51 (internal quotation marks and citation omitted). Viewing all of Defendant's claims of error together in the context of the proceedings as a whole, we conclude that Defendant was not deprived of a fair trial.

## CONCLUSION

**{34}**    We reverse Defendant's conviction for resisting, evading, or obstructing an officer and remand to the district court to vacate that conviction and resentence Defendant accordingly. We affirm in all other respects.

**{35}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**