This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37410**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**GERARD MORRIS,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Gerard Morris appeals his conviction for criminal sexual penetration in the first degree (child under thirteen), in violation of NMSA 1978, Section 30-9-11(D)(1) (2009). Defendant argues that there was insufficient evidence to support his conviction and that we should therefore reverse and remand for entry of judgment on the lesser-included offense of criminal sexual contact of a minor in the third degree, in violation of NMSA 1978, Section 30-9-13(C)(1) (2003). Alternatively, Defendant argues that he is

entitled to a new trial because the district court erred by (1) admitting, under the medical diagnosis exception to the hearsay rule, the testimony of the State's expert witness as to statements Victim made to her; and (2) allowing the State to amend the date of the charged offense after the close of the State's case. Unpersuaded, we affirm.

## DISCUSSION

### I. The Evidence Suffices to Support Defendant's Conviction

{2}    Defendant argues that the evidence presented at trial was insufficient to support his conviction for first-degree criminal sexual penetration. We disagree.

{3}    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

{4}    In deciding whether there was sufficient evidence to support Defendant's conviction, we consider all the evidence admitted by the trial court, including wrongfully-admitted evidence. *State v. Post*, 1989-NMCA-090, ¶¶ 22-23, 109 N.M. 177, 783 P.2d 487. "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548. A fair inference "is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (alterations, internal quotation marks, and citation omitted). Inferences and evidence contrary to the verdict "do[] not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

{5}    The jury was instructed, consistent with UJI 14-957 NMRA, that the charge of criminal sexual penetration required the State to prove, beyond a reasonable doubt, that

(1) "[D]efendant caused the insertion, to any extent, [of] his finger, penis or tongue, into the vagina of [Victim] or caused [Victim] to engage in [c]unnilingus"; (2) "[Victim] was a child under the age of thirteen"; (3) "[D]efendant's act was unlawful"; and (4) "[t]his happened in New Mexico on or between the 25th day of November 25th [sic], 2015[,] and January 11th, 2016." On appeal, Defendant only challenges the sufficiency of the evidence as to the first element.

{6}    At trial, the State presented Defendant's own statements as well as the testimony of Victim and her mother, all of which supported the conclusion that Defendant had contact with Victim's unclothed genitals. The district court admitted a video recording of Defendant's interview with Rio Rancho Police detective Monica Casaus into evidence, and the video was played for the jury. At various points throughout the interview, Defendant described an instance in which he touched Victim's unclothed vagina, and Defendant's trial testimony confirmed the touching. Victim's mother testified at trial that Victim told her in January 2016 that Defendant "had done something to her." Victim testified that Defendant used his hand to touch the "private part" she uses "[t]o pee."[1]

{7}    The State's expert, Dr. Shalon Nienow, testified that, while she was obtaining Victim's medical history prior to a physical examination, Victim told her that a "bad boy" had used his finger to touch her inside her body. Victim "also said that his private part touched her pookie[,]" which she had described as the place "where the pee gets out." The State elicited from Dr. Nienow that she diagnosed Victim with chlamydia in May 2016. Victim's urine tested positive for the disease, as did swabs of Victim's labia and rectum. According to Dr. Nienow, "[c]hlamydia is transmitted from direct contact of infected secretions [like semen and vaginal fluid] to a mucus membrane[,]" such as the inside of the vagina or rectum, and cannot be spread through skin-to-skin contact or saliva. Dr. Nienow explained that chlamydia is a localized infection—its presence in the area of a particular mucus membrane is indicative of contact between that mucus membrane and secretions carrying the disease. Taken as a whole, the expert testimony supports the inference that, because Victim had a chlamydial infection in her vagina, the mucus membrane in her vagina must have had contact with secretions carrying the disease, and that this contact could not have occurred absent penetration.

{8}    The jury could reasonably have concluded that Defendant penetrated Victim using either his finger or penis, or both. On the basis of (1) Defendant's admission that he touched Victim's unclothed vagina, (2) Victim's testimony that Defendant used his hand to touch the private part she uses to pee, and (3) Dr. Nienow's testimony that Victim said her abuser used his finger to touch her inside her body, it would have been reasonable to conclude that Defendant inserted his finger into Victim's vagina. Alternatively, it would have been reasonable to infer that Defendant transmitted chlamydia to Victim by inserting his penis into her vagina based on (1) Dr. Nienow's testimony that Victim told her that her abuser's "private part touched her pookie"; (2)

---

1Although Victim was unable to identify Defendant in open court, she testified that "Joey" had perpetrated the touching while they were living together, and other testimony established that Defendant went by that name. The jury could reasonably have understood that Victim was referring to Defendant.

Defendant's admission that some sexual contact occurred between him and Victim;[2] (3) Victim's mother's testimony that Victim identified Defendant as her abuser in January 2016; (4) Dr. Nienow's testimony that Victim had a chlamydial infection in her vagina in May 2016; and (5) Dr. Nienow's testimony that chlamydia can only be transmitted by direct contact between infected secretions and a mucus membrane. Because the evidence provided reasonable grounds for the jury to conclude that Defendant inserted his finger or penis into Victim's vagina, we hold that the evidence was sufficient for the guilty verdict as to criminal sexual penetration.

## II.    It Was Not Plain Error to Admit Victim's Statements to Dr. Nienow

**{9}**    Defendant next argues that the district court committed plain error when it admitted Victim's hearsay statements through Dr. Nienow's testimony. Dr. Nienow testified that Victim said that the touching she experienced "felt weird," that she "didn't like it," that she "doesn't like boys anymore," that she was made to remove her shorts and underwear, that she told her abuser to stop, that she was nearly hit by her abuser's belt buckle when he pulled up his pants, that her abuser told her mother that he had peed in his pants, that Victim did not see her abuser pee in his pants but thought it was weird for him to say that; and that her abuser's private part was "sticky like syrup[.]" Because Defendant did not preserve this issue by objecting to the testimony at trial, we review for plain error. *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056. To find that the erroneous admission of evidence rises to the level of plain error, we "must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). We are not persuaded that plain error occurred.

**{10}**    The State argues that the district court did not err because the statements at issue are admissible pursuant to the medical diagnosis exception to the hearsay rule in Rule 11-803(4) NMRA. We assume without deciding that the district court abused its discretion by admitting the statements but conclude that their admission does not rise to the level of plain error. Because none of the challenged hearsay statements specified who had perpetrated the abuse that Victim described to Dr. Nienow, the statements did not bolster Victim's identification of Defendant as her abuser. At most, the statements supported the conclusion that Victim's abuser, whoever he was, had penetrated her. But that conclusion was readily reachable from an unchallenged portion of Dr. Nienow's testimony: the jury had already learned that chlamydia spreads from contact between infected secretions, such as semen, and a particular mucus membrane, and Dr. Nienow testified that a swab of Victim's vagina had tested positive for the infection. And that same conclusion was perfectly consistent with the theory Defendant pursued at trial, under which Defendant did not dispute that Victim had suffered sexual abuse through penetration but sought to suggest that someone other than himself was the perpetrator.

---

[2]Defendant maintains that Victim initiated the contact and that it was not penetrative. However, "the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Because there was evidence indicating that Victim was penetrated, and that Defendant was her abuser, the jury could reasonably have taken account of Defendant's admission that he had contact with Victim's unclothed vagina while rejecting Defendant's denial that there was unlawful penetration.

In light of Dr. Nienow's other testimony, Victim's identification of Defendant as her abuser, and Defendant's own admission that he had had contact with Victim's unclothed vagina, there was ample evidence besides the challenged statements supporting the jury's finding of guilt. On this record, the admission of the challenged statements, even if erroneous, does not cause us to doubt the validity of the verdict. *Cf. Montoya*, 2015-NMSC-010, ¶ 49 (holding that no plain error resulted where it was unclear how the challenged testimony could have led to improper jury speculation, the testimony did not identify the defendant as the cause of the victim's injuries, and "ample [other] evidence . . . support[ed] the jury's finding of guilt").

**{11}** We hold that the district court did not plainly err by admitting the challenged statements.

### III. The District Court Did Not Err by Allowing the State to Amend the Date of the Charged Offense

**{12}** Defendant's final argument is that the district court erred by allowing the State to amend the timeframe of the charged offense after the State had presented its evidence. We disagree.

**{13}** Criminal defendants have a fundamental right to reasonable notice of the charges against them and a fair opportunity to put on a defense. *State v. Baldonado*, 1998-NMCA-040, ¶ 21, 124 N.M. 745, 955 P.2d 214. "A charging document should contain information sufficient to enable [a] defendant to prepare a defense." *State v. Mankiller*, 1986-NMCA-053, ¶ 15, 104 N.M. 461, 722 P.2d 1183 (emphasis omitted). Under Rule 5-204(C) NMRA, the allegations in an indictment may be amended so long as the amendment does not prejudice the defendant's substantial rights. "We review a district court's interpretation and application of Rule 5-204 de novo." *State v. Stevens*, 2014-NMSC-011, ¶ 49, 323 P.3d 901 (internal quotation marks and citation omitted).

**{14}** After the close of the State's case, the State moved to amend the date of the charged offense from "[o]n or about November 25, 2015[,]" to "on or between November 1, 2015[,] to January 11, 2016." The district court granted the State's motion over defense counsel's objection. The jury instructions ultimately identified the relevant timeframe as "on or between the 25th day of November 25th [sic], 2015[,] and January 11th, 2016."

**{15}** Defendant argues that the amendment prejudiced his defense because his trial strategy was based on the original allegation that criminal sexual penetration occurred on or about November 25, 2015. Defendant argues that, based on the original allegation, he adopted a trial strategy focused on Victim's whereabouts near the end of 2015 and chose not to pursue other (largely unspecified) defense theories, such as that one of Defendant's roommates could have been Victim's abuser. We see no reason, however, why the original date description should have caused Defendant to forgo any of the defenses that were available to him.

**{16}** In *Stevens*, the criminal information alleged that the charged crimes occurred "on or about November 12, 2007." *Id.* ¶ 9 (alteration and internal quotation marks omitted). After the close of evidence, the district court allowed the State to amend the date of the charged offense to "on, about or between the 1st day of October, 2007, through the 22nd day of November, 2007." *Id.* (internal quotation marks omitted). In holding that the amendment was not prejudicial to the defense, our Supreme Court reasoned that the defendant was on notice that the events of the case were alleged to have occurred "sometime in the fall of 2007," when she was living with her daughter and boyfriend in the area of Aztec, New Mexico. *Id.* ¶ 55. The imprecision in the original date conveyed by the "on or about" phrasing was "[m]ost fundamental[]" to the Court's decision. *Id.* ¶ 54.

**{17}** Here, because the indictment alleged an indefinite date, Defendant was on notice that the events of the case were alleged to have occurred sometime near the end of 2015, when Victim was living with him in Rio Rancho. Indeed, before the State moved to amend the date, defense counsel cross-examined Victim's mother about Victim's whereabouts in November 2015, December 2015, and January 2016. Defense counsel concluded the cross-examination after eliciting testimony that, in January 2016, just before Victim disclosed that she had been touched, she had been in contact with other people while in California for Christmas and at the home of a friend in Belen upon returning to New Mexico. By attempting to suggest that Victim could have been abused by another person as late as January 2016, Defendant demonstrated his awareness of the breadth of the timeframe relevant to the charges.

**{18}** The effect of Victim's mother's testimony is the same when weighed against either description of the relevant timeframe. Defendant relied on Victim's mother's testimony to suggest that he did not commit criminal sexual penetration against Victim *on or about* November 25, 2015, and that someone else had done so in California around that time. That suggestion was no more or less plausible when the jury was asked to assess whether Defendant committed criminal sexual penetration against Victim on or between November 25, 2015, and January 11, 2016. Moreover, Defendant could have relied on the theory that one of his roommates was Victim's abuser just as effectively under either description of the relevant timeframe; although Defendant apparently elected not to pursue that defense, we perceive no reason why the choice would have been any different under the amended date range. Hence, the amendment neither minimized the impact of the theories Defendant pursued at trial nor affected the viability of the theories Defendant claims he would have pursued had the amendment occurred earlier. We thus conclude that the amendment was not prejudicial to the defense.

**CONCLUSION**

**{19}** We affirm.

**{20}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**