This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39428**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RENEE MILLER,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Renee Miller appeals her convictions for driving while under the influence of intoxicating liquor or drugs (DWI) in violation of NMSA 1978, Section 66-8-102(B) (2016); possession of drug paraphernalia in violation of NMSA 1978, Section 30-31-25.1 (2001, amended 2022); and driving without insurance in violation of NMSA 1978, Section 66-5-205 (2013). Defendant argues that (1) the district court erred in

denying her motion to suppress the results of a blood test; and (2) the evidence was insufficient to support her conviction for DWI. Unpersuaded, we affirm.

**DISCUSSION**

**I.     The District Court Did Not Err in Denying Defendant's Motion to Suppress**

**{2}**     Defendant argues that the district court erred in denying her motion to suppress because (1) her consent to the blood test was involuntary; (2) the search warrant was not supported by probable cause; and (3) there was neither probable cause nor exigent circumstances to justify the warrantless search.[1] We disagree. Because we conclude that Defendant validly consented to the blood test, we do not address Defendant's other arguments regarding suppression.

**{3}**     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "Whether consent to search is voluntary is a question of fact that depends on the totality of the circumstances." *State v. Lovato*, 2021-NMSC-004, ¶ 15, 478 P.3d 927. To determine the voluntariness of consent to search, "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *State v. Anderson*, 1988-NMCA-033, ¶ 7, 107 N.M. 165, 754 P.2d 542; *accord State v. Davis*, 2013-NMSC-028, ¶ 14, 304 P.3d 10. "The district court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." *Lovato*, 2021-NMSC-004, ¶ 15 (internal quotation marks and citation omitted). On appeal, this Court "defer[s] to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186 (internal quotation marks and citation omitted). "The question is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *Anderson*, 1988-NMCA-033, ¶ 8.

**{4}**     Defendant argues that the district court's determination that Defendant consented to the blood test is not supported by substantial evidence. Notably, Defendant does not argue that there was an absence of clear and positive testimony that her consent was specific and unequivocal. *See id.* ¶ 7. Because there is no dispute as to this factor, we move to the second and third tiers of the analysis: whether

---

1Defendant argues that the State drew her blood in violation of her rights under both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. However, because Defendant does not argue that the New Mexico Constitution provides an independent basis for reversal on the blood test search, we assume without deciding that both constitutions afford the same protection in this context and analyze the constitutionality of the search under one standard. *See State v. Ochoa*, 2004-NMSC-023, ¶ 6, 135 N.M. 781, 93 P.3d 1286. "As a result, we focus on Fourth Amendment jurisprudence as it has developed in our state." *State v. Carlos A.*, 2012-NMCA-069, ¶ 12, 284 P.3d 384.

Defendant's consent was the result of duress or coercion, and whether the consent was voluntary considering the presumption disfavoring the waiver of constitutional rights.

**{5}** Defendant contends that her consent was coerced because she initially refused to submit a blood sample, "then changed her mind after being told by [Officer Edgar] Soto that he would obtain a warrant." We disagree and conclude that substantial evidence demonstrates that Defendant's consent was not the product of duress or coercion.

**{6}** At the suppression hearing, Officer Soto testified that Defendant was arrested and transported to the Alamogordo Police Department (APD) building, that Officer Soto read to Defendant the Implied Consent Advisory for breath tests, and that Defendant agreed to provide breath samples and provided multiple breath samples. Officer Soto then read to Defendant the Implied Consent Advisory for blood tests. In response, Defendant declined to provide a blood sample. Officer Soto then "advised her of the next step, which was to apply for a warrant [for a blood test] and a judge will determine if it is granted or not." At that point, Defendant "changed her mind" and agreed to provide a blood sample.

**{7}** We are not persuaded that this evidence demonstrates coercion or duress sufficient to invalidate Defendant's specific and unequivocal consent. *See State v. Chapman*, 1999-NMCA-106, ¶ 21, 127 N.M. 721, 986 P.2d 1122 ("Coercion involves police overreaching that overcomes the will of the defendant."). While it is true that Defendant provided her consent after Soto explained to her the "next step" following her refusal, the evidence does not demonstrate that her subsequent consent was borne of coercion. Instead, we believe that Soto's statement that he would "apply for a warrant and a judge will determine if it is granted or not" was a "reasonable explanation of the process an officer would follow after a defendant refused to consent to a search." *Davis*, 2013-NMSC-028, ¶ 26. *Compare State v. Shaulis-Powell*, 1999-NMCA-090, ¶¶ 11-12, 127 N.M. 667, 986 P.2d 463 (concluding that an officer's comment that he "felt" or "believed" that he had enough evidence to secure a search warrant did not rise to the level of coercion or duress), *with Lovato*, 2021-NMSC-004, ¶¶ 17, 21 (explaining that, when an officer unequivocally asserts that a search warrant is forthcoming, "a defendant's belief that refusal to consent would be futile demonstrates involuntary consent" (internal quotation marks and citation omitted)). Nor is there evidence that Officer Soto used force, displayed his weapons, threatened Defendant with violence, or subjected Defendant to abusive questioning. *See Chapman*, 1999-NMCA-106, ¶ 21 (describing these and other factors that may render consent involuntary due to coercion or duress).

**{8}** Lastly, we recognize that there is a presumption against the waiver of constitutional rights. *Anderson*, 1988-NMCA-033, ¶ 7. In this case, that presumption is outweighed by the specific facts supporting consent. Accordingly, we hold that there is substantial evidence that Defendant's consent was voluntary. We therefore affirm the denial of Defendant's motion to suppress.

## II. The Evidence Suffices to Support Defendant's DWI Conviction

**{9}** Defendant argues that there was insufficient evidence to convict her of DWI because the State failed to present sufficient evidence that she was incapable of safely driving her vehicle. We disagree.

**{10}** When reviewing the sufficiency of the evidence, we "scrutin[ize] . . . the evidence and supervis[e] . . . the jury's fact-finding function to ensure that[] . . . a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). We first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548. We measure the State's evidence against the jury instructions that the district court gave. *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517.

**{11}** The jury was instructed that, to convict Defendant of DWI, it had to find beyond a reasonable doubt, in relevant part, that Defendant operated a motor vehicle "under the influence of drugs to such a degree that [D]efendant was incapable of safely driving a vehicle." The parties elicited the following evidence at trial. Responding officers testified that, upon contact, Defendant appeared "agitated," "jumpy," "jittery," and "uneasy"; was "constantly talking . . . pretty fast"; and had "abnormal movement" in her face. Both officers testified that they noticed an odor of alcohol, and Officer Soto testified that the odor emanated from Defendant's breath. Defendant also performed poorly on standardized field sobriety tests. She had "a difficult time balancing," "missed the first heel-to-toe [test]," and did not make the proper turn during the walk-and-turn test. Defendant admitted to Officer Soto that she had consumed methamphetamine, marijuana, and alcohol at various points on the day of the incident. In addition, Defendant was involved in a car accident earlier that day; she ran into the rear of a pickup truck after it had "slammed on its brakes" before approaching a stop sign. Finally, the blood test results showed 0.15 mg/L of methamphetamine in Defendant's blood sample. The forensic toxicologist who analyzed Defendant's blood sample testified that the result was "higher than . . . therapeutic ranges." The toxicologist also explained the impact of methamphetamine use on a person's driving ability, stating that methamphetamine use can impair motor skills and decision-making, and that abuse of the substance can result in loss of coordination and restless or erratic movement.

**{12}** We hold that this evidence suffices to support Defendant's conviction for DWI. *See State v. Gutierrez*, 1996-NMCA-001, ¶ 4, 121 N.M. 191, 909 P.2d 751 (concluding that evidence showing that the defendant narrowly missed hitting a truck, smelled of alcohol, failed three field sobriety tests, and admitted drinking alcohol and smoking marijuana sufficed to support his DWI conviction); *see also State v. Neal*, 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330 (concluding that evidence showing that the defendant smelled of alcohol, admitted drinking alcohol, and showed signs of intoxication during field sobriety tests sufficed to support his DWI conviction). Viewing the evidence in the light most favorable to the guilty verdict, a jury could reasonably find that Defendant was under the influence of drugs to such a degree that she was incapable of safely driving her vehicle. Even though evidence at trial demonstrated that Officer Mauricio Puente did not observe Defendant violate any traffic laws, that there is no uniform connection between a specific level of methamphetamine in the blood and its impact on a person's ability to safely operate a vehicle, and that Defendant may not have been at fault for the earlier car accident, members of the jury were free to "use their common sense to look through testimony and draw inferences from all the surrounding circumstances," *State v. Chandler*, 1995-NMCA-033, ¶ 14, 119 N.M. 727, 895 P.2d 249 (internal quotation marks and citation omitted)), and to "reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Because the evidence suffices to support Defendant's DWI conviction, we affirm that conviction.

**CONCLUSION**

**{13}** We affirm.

**{14}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**