# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-008

Filing Date: October 14, 2021

No. A-1-CA-37486

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LEE WALDO GARCIA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Certiorari Denied, January 16, 2022, No. S-1-SC-39085. Released for Publication March 1, 2022.

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**IVES, Judge.**

**{1}** Defendant Lee Waldo Garcia appeals his conviction and sentence for homicide by vehicle while under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-101(A), (C) (2016). Defendant argues that his conviction was the result of fundamental error because the jury instructions did not accurately present the law of proximate causation and that it is not supported by sufficient evidence of causation. Should his conviction stand, Defendant argues that his sentence must be reversed

because it violates his right against double jeopardy. We disagree with Defendant regarding the validity of his conviction, but, because the district court increased Defendant's sentence after he had formed a reasonable expectation in its finality, we reverse his sentence.

## BACKGROUND

**{2}** While drunk, Defendant crashed his truck into Victim as Victim was attempting to cross the street in his motorized wheelchair. After Victim had been in the hospital for approximately two weeks, Victim's family decided to remove him from life support, and he died.

**{3}** The State prosecuted Defendant for driving while under the influence (DWI), aggravated DWI, and vehicular homicide. The jury found Defendant guilty of two crimes: (1) homicide by vehicle while under the influence of intoxicating liquor, contrary to Section 66-8-101(A), (C), a second-degree felony; and (2) aggravated DWI, contrary to NMSA 1978, Section 66-8-102(D)(1) (2016). The district court initially sentenced Defendant to an actual prison term of ten years but twice resentenced Defendant, and the ultimate sentence includes a fifteen-year term of incarceration. Defendant appeals.

## DISCUSSION

### I. The Jury Instruction for Vehicular Homicide Did Not Result in Fundamental Error

**{4}** Defendant argues that his conviction must be reversed because the phrase "outside event," as used in the uniform jury instruction defining proximate cause, UJI 14-251 NMRA, and in the given instructions, was not defined for the jury. Because Defendant did not raise the issue in the district court, we review for fundamental error. *State v. Cabezuela*, 2015-NMSC-016, ¶ 37, 350 P.3d 1145. Our analysis "begins at the same place as [the] analysis for reversible error[:]" we ask whether "a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633; *see State v. Grubb*, 2020-NMCA-003, ¶ 7, 455 P.3d 877 ("In a fundamental error analysis, we begin by considering whether reversible error exists[.]"). Jury instructions cause confusion or misdirection when, "through omission or misstatement," they do not provide "an accurate rendition" of the essential elements of a crime. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. But if an instruction "accurately presents the law[,]" it "is proper, and nothing more is required[.]" *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591. To the extent Defendant's argument requires us to analyze whether UJI 14-251 accurately states the law, our review is de novo. *Laney*, 2003-NMCA-144, ¶ 38.

**{5}** Defendant contends that, by using the phrase "outside event" to refer to something that could interrupt the chain of events between a defendant's act and a victim's death, the UJI departs from conventional notions of proximate causation in criminal law. We disagree.

**{6}** When causation is at issue in a homicide case, the jury must determine whether an act of the defendant was (1) a factual cause of the victim's death and (2) the proximate cause of the victim's death. *See* UJI 14-251, use note 1; *State v. Montoya*, 2003-NMSC-004, ¶ 22 n.1, 133 N.M. 84, 61 P.3d 793. Proximate causation is a question of whether the death was a "natural and probable consequence of[] the accused's conduct." *State v. Simpson*, 1993-NMSC-073, ¶ 14, 116 N.M. 768, 867 P.2d 1150 (internal quotation marks and citation omitted). To be a proximate cause, a defendant's conduct need not "be the *sole* cause of the [death,]" *id.*, and a coinciding event that contributed to a victim's death "to an insignificant extent" cannot relieve a defendant of liability. *Montoya*, 2003-NMSC-004, ¶ 19 (internal quotation marks and citation omitted). Even an event that significantly contributes to a victim's death does not relieve a defendant of liability, *id.*, unless "it is a superseding cause that negates the defendant's conduct." *Simpson*, 1993-NMSC-073, ¶ 14.

**{7}** We presume that our Supreme Court's uniform instruction regarding causation in homicide cases, UJI 14-251, is correct, *see State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076, and our Supreme Court has recognized that UJI 14-251 encompasses both factual and proximate causation. *Montoya*, 2003-NMSC-004, ¶ 22 n.1. Our own review of the text of UJI 14-251 confirms that the instruction adequately conveys the necessary causation concepts. The instruction requires the jury to determine whether an "act of the defendant was a significant cause of the death . . . without which the death would not have occurred" and whether "[t]he death was a foreseeable result of" that act—i.e., whether the death resulted from that act "in a natural and continuous chain of events, uninterrupted by an outside event[.]" *Id.* Defendant asserts that the phrase "outside event" is ambiguous and should have been defined for the jury. We conclude that no such definition was necessary because "outside event" has a common meaning, *see State v. Munoz*, 2006-NMSC-005, ¶ 24, 139 N.M. 106, 129 P.3d 142, and a reasonable jury would understand the meaning of the phrase in the context of the given instruction. We therefore reject Defendant's argument that, without a definition of "outside event," the given instructions may have confused the jury and were thus erroneous.[1] *See Laney*, 2003-NMCA-144, ¶ 38. Because it would not have been reversible error for the district court to decline to instruct the jury on the meaning of "outside event" if Defendant had requested such an instruction at trial, we hold that the lack of an instruction defining that phrase was not fundamental error. *See State v. Adamo*, 2018-NMCA-013, ¶ 27, 409 P.3d 1002 (holding that, where "there was no reversible error" "in the instructions[,]" "there was no fundamental error").

---

[1]Defendant urges us to apply the rule of lenity, *see generally State v. Ogden*, 1994-NMSC-029, ¶ 25, 118 N.M. 234, 880 P.2d 845 ("The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute."), and cites *State v. Crain*, 1997-NMCA-101, ¶ 20, 124 N.M. 84, 946 P.2d 1095, for the proposition that the rule of lenity applies to uniform jury instructions. *Crain* does not support that proposition. Even assuming the rule of lenity is applicable to the interpretation of jury instructions as a general matter, that rule only comes into play when the language at issue is ambiguous, and, as we have explained, the language of UJI 14-251 is not ambiguous.

## II.     The Evidence Suffices to Support Defendant's Conviction

**{8}**     Defendant argues that the evidence did not suffice to show that Victim's death resulted from Defendant's act, uninterrupted by an outside event, and that it only sufficed to show that he caused great bodily harm, not homicide. Defendant contends that (1) the evidence demonstrates that Victim's own negligence in attempting to cross the street caused the collision, and (2) the subsequent decision to remove Victim from life support relieves Defendant of liability for Victim's death. We disagree with both contentions.

**{9}**     In reviewing the sufficiency of the evidence, we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

**{10}**     "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548. A fair inference "is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (alterations, internal quotation marks, and citation omitted). Inferences and evidence contrary to the verdict "[do] not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "[I]n the determination of proximate cause[,] common sense is not to be eliminated." *State v. Landgraf*, 1996-NMCA-024, ¶ 31, 121 N.M. 445, 913 P.2d 252 (internal quotation marks and citation omitted).

**{11}**     The State presented sufficient evidence for the jury to conclude, under the given instructions, that Defendant's act of "operat[ing] a motor vehicle while under the influence of intoxicating liquor" caused Victim's death "in a natural and continuous chain of events, uninterrupted by an outside event[.]" *See* UJI 14-240B NMRA; UJI 14-251; *see generally State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). We reject the first of Defendant's two arguments to the contrary because the State presented sufficient evidence that Defendant was responsible for the collision. One of the State's eyewitnesses, Melissa Jacobsen, testified that she was driving approximately one car length behind Defendant, who had been swerving and driving at inconsistent speeds, when she noticed Victim begin to cross the street. Recognizing that it was dangerous for Victim to cross when Defendant had been driving so erratically, Ms. Jacobsen screamed out her car window and honked the horn repeatedly. And, in the time that Ms.

Jacobsen was screaming and honking her car horn, Defendant did not change his speed, apply his brakes, or take any other action to avoid colliding with Victim. Based on Ms. Jacobsen's testimony regarding everything she did to warn of the danger she perceived, it was reasonable for the jury to conclude that Defendant had enough time to avoid the collision and indeed could have avoided the collision had he not been drunk. *Cf. State v. Munoz*, 1998-NMSC-041, ¶¶ 19-22, 126 N.M. 371, 970 P.2d 143 (explaining that "a jury's guilty verdict in a vehicular homicide case is its determination that the defendant had the power to prevent the victim's death by driving lawfully").

**{12}** We reject Defendant's second argument because the State also presented sufficient evidence that Victim's injuries from the collision caused his death. This evidence consisted of the testimony of two experts: Dr. Jasmeet Singh Paul, the attending surgeon when Victim arrived at the University of New Mexico Hospital (UNMH), and Dr. Hannah Kastenbaum, the medical investigator who declared the cause of Victim's death. Dr. Paul testified that, upon Victim's arrival at UNMH, hospital staff determined that Victim was likely to die of his injuries within two to three weeks. Acknowledging that Victim died after he was taken off life support at the direction of Victim's family, Dr. Paul explained that, from the collision, Victim suffered "multisystem trauma" including thirteen rib fractures, which in turn caused pneumonia, and a severe brain injury and that the combination of Victim's injuries and resulting complications was what "really" "led to his death." In addition, Dr. Kastenbaum testified that "blunt trauma" from "being struck by a vehicle" was the cause of Victim's death. Dr. Kastenbaum elaborated that there was no reason to conclude that Victim "would have died when he did" "but for [those] injuries[.]" And Dr. Kastenbaum testified that, while Victim's preexisting health problems contributed to his death and that it was impossible to determine the extent to which each underlying factor caused Victim to die when he did, his injuries from the collision were a "tipping point" in bringing about his death.

**{13}** Contrary to Defendant's arguments on appeal, the evidence at trial gave the jury a reasonable basis for concluding that no outside event—whether it be Victim's own negligence or his family's decision to remove him from life support—interrupted the natural and continuous chain of events that foreseeably resulted from Defendant's act of drunk driving. *See Montoya*, 2003-NMSC-004, ¶ 19 (explaining that a defendant's act "may be a legal cause of death" even when there are "other significant causes" of the death); *Rojo*, 1999-NMSC-001, ¶ 19 (explaining that the jury is free to reject a defendant's portrayal of the facts). Put simply, the evidence was sufficient for the jury to find that (1) Defendant would have been able to avoid the collision if he had not been drunk; (2) Victim would not have died when he did but for the injuries he suffered as a result of Defendant's drunk driving; and (3) the manner of Victim's death was a foreseeable consequence of Defendant's actions. Accordingly, we hold that the evidence suffices to sustain Defendant's conviction.

### III.    Defendant's Sentence Violates His Right Against Double Jeopardy

**{14}** We now turn to Defendant's double jeopardy challenge to his sentence. We begin by describing the relevant procedural background, then explain our analysis.

## A.    Procedural Background

**{15}**    At sentencing on April 3, 2018, Defendant admitted that this was his fourth conviction for DWI, and the State offered proof, for the purposes of the habitual-offender statute, NMSA 1978, § 31-18-17(A), (D)(1) (2003), that Defendant had a 2011 felony conviction for selling or giving alcoholic beverages to minors. *See generally* NMSA 1978, § 60-7B-1(A), (F) (2004, amended 2013). The district court orally sentenced Defendant, at the highest end of its jurisdiction, to a total of seventeen-and-a-half years: eighteen months for aggravated DWI, *see* § 66-8-102(G) (mandating an eighteen-month sentence upon a fourth conviction for DWI), to be served consecutively to a sixteen-year sentence for vehicular homicide, which included a one-year habitual offender enhancement. *See* NMSA 1978, § 31-18-15(A)(4) (2016) (setting the basic sentence for a second-degree felony "resulting in the death of a human being" at fifteen years); § 31-18-17(A), (D)(1) (increasing the basic sentence for a noncapital felony by one year when the person convicted is deemed a habitual offender based on one prior conviction or conditional discharge for a felony that was part of a separate transaction or occurrence and less than ten years has passed since the person completed the sentence for the prior felony). The court suspended seven-and-a-half years of the sentence for an actual term of ten years. Nothing in the district court's oral pronouncement of sentence indicated that the sentence was tentative. Thereafter, the court entered an order remanding Defendant "to the custody of the Metropolitan Detention Center" (MDC) because he had been "[s]entenced to the custody of the [New Mexico Corrections Department (NMCD)]" "to serve a term of [ten years]." The district court memorialized its sentence in a letter to counsel sent two days later.

**{16}**    Before entry of judgment and sentence—which the district court delayed because the parties' proposed judgment and sentence did not reflect the sentence of actual incarceration corresponding to each of Defendant's convictions—Defendant moved to reconsider his sentence and vacate the aggravated DWI conviction. Defendant argued that his conviction for both crimes subjected him to double jeopardy. The district court agreed and, at a hearing on April 11, vacated the aggravated DWI conviction and resentenced Defendant on the vehicular homicide conviction, as a habitual offender, to sixteen years with six years suspended for an actual term of ten years. The court also, for the first time, designated Defendant's crime a serious violent offense at the April 11 sentencing. *See generally* NMSA 1978, § 31-18-15(F) (2016, amended 2019) (directing the sentencing court to determine whether any felony for which it has imposed a sentence of imprisonment is a serious violent offense that, under NMSA 1978, Section 33-2-34 (2015), is eligible for fewer merit-based sentence reductions than are nonviolent offenses).

**{17}**    The district court orally resentenced Defendant a second time on April 19, 2018. In a later order clarifying its judgment and sentence, the district court explained that it held the April 19 hearing because the parties had not submitted a proposed judgment and sentence following the April 11 sentencing. At the April 19 hearing, the district court determined that it had lacked the discretion to designate Defendant's conviction for second-degree vehicular homicide a serious violent offense due to what it perceived as

a legislative oversight. *See* §§ 31-18-15(F), 33-2-34(L)(4)(o)(14) (granting trial courts discretion to determine that a person convicted of third-degree—but not second-degree—homicide by vehicle has committed a serious violent offense). Attempting to compensate for this perceived error, the court resentenced Defendant to fifteen years, which included a one-year habitual offender enhancement. The district court did not suspend any part of the sentence and did not designate the crime a serious violent offense. The net result was to change the actual term of imprisonment from ten to fifteen years.

**{18}** Defendant argues that his current sentence violates principles of double jeopardy because, after his original sentencing, he began serving the original sentence with a reasonable expectation in its finality. Specifically, Defendant contends that the second resentencing subjected him to double jeopardy because the sentence imposed at that time and currently in place is fifteen years, whereas his prison term had been ten years under the previous two sentences. Reviewing this claim of error de novo, *State v. Soutar*, 2012 NMCA-024, ¶ 11, 272 P.3d 154; *State v. Yazzie*, 2018-NMCA-001, ¶ 9, 410 P.3d 220, we agree.

**B.** **Resentencing Defendant Violated a Double Jeopardy Principle Because He Had a Reasonable Expectation That His Original Sentence Would Not Be Increased**

**{19}** The double jeopardy clauses of the United States and New Mexico Constitutions protect a criminal defendant's "reasonable expectation of finality" in a sentence. *State v. Porras*, 1999-NMCA-016, ¶¶ 1, 13-14, 126 N.M. 628, 973 P.2d 880. That protection is the basis of a "well-established principle of New Mexico law that a trial court generally cannot increase a valid sentence once a defendant begins serving that sentence." *Id.* ¶ 7 (citing, among other cases, *State v. Cheadle*, 1987-NMSC-100, ¶¶ 10-16, 106 N.M. 391, 744 P.2d 166); *see also* 6 Wayne R. LaFave et al., *Criminal Procedure* § 26.7(c) (4th ed. 2020) (recognizing that, under the double jeopardy clause of the United States Constitution, "a defendant's legitimate expectation of finality in an imposed sentence" may "stand as a bar to resentencing" (internal quotation marks and citation omitted)). This principle protects against an increase in the actual term of incarceration in which a defendant has a reasonable expectation of finality. *See Porras*, 1999-NMCA-016, ¶¶ 3-5, 12-13 (holding that the defendant had a "reasonable expectation in the finality of the length and structure" of his sentence that was violated when the district court modified his sentence to suspend less imprisonment than it had originally suspended).

**{20}** Straightforward application of these principles leads to the conclusion that upon remand to custody for the purpose of serving the originally-imposed sentence, Defendant began serving his sentence, with a reasonable expectation in its finality, before his resentencings on April 11 and April 19. *See id.* ¶ 14 (holding that the defendant had a reasonable expectation of finality in an oral sentence from the moment "the trial court remanded him to the custody of the sheriff" and he began serving the sentence). Seeking to avoid this conclusion, the State makes three arguments. We address each in turn.

## C. The State's Arguments Are Unavailing

**{21}** First, the State argues that Defendant could not have had a reasonable expectation of finality in his sentence because it had not yet been incorporated into a final judgment. This argument is contrary to New Mexico precedent. Under New Mexico law, a defendant can form a reasonable expectation of finality in an otherwise interlocutory sentence such as an oral sentence. *Id.* An oral pronouncement of sentence does not always give rise to a reasonable expectation of finality. *See, e.g.*, *Soutar*, 2012-NMCA-024, ¶¶ 13-15. Our courts have instead drawn a bright line at the commencement of service of sentence; a defendant can reasonably rely on the finality of a sentence—oral or written—once the defendant has begun serving the sentence. *See Porras*, 1999-NMCA-016, ¶ 14; *Cheadle*, 1987-NMSC-100, ¶ 16 ("[I]t is . . . improper for a trial court in New Mexico to set aside a valid sentence after a defendant has been committed thereunder[] and impose a new or different sentence increasing the punishment." (internal quotation marks and citation omitted)).[2]

**{22}** We also reject the State's second argument—that Defendant did not have a reasonable expectation of finality in his sentence because he filed a motion labelled a motion for reconsideration of his sentence after the April 3 sentencing[3]—because it

---

[2]We recognize that some New Mexico precedent invokes the "well[-]established" rule that "the trial court can change [an oral sentence] at any time before the entry of written judgment." *State v. Diaz*, 1983-NMSC-090, ¶ 4, 100 N.M. 524, 673 P.2d 501. *But cf.* 6 LaFave, *supra*, § 26.4(d) ("Unfortunately, it is not unusual for a trial judge to announce one sentence and enter another. Jurisdictions have taken various approaches to resolving this inconsistency, with the majority noting that the oral pronouncement controls, based in part on the defendant's right to be present at sentencing."); *State v. Stejskal*, 2018-NMCA-045, ¶ 14, 421 P.3d 856 (discussing Rule 5-113(B) NMRA, which permits courts to correct clerical mistakes in written sentencing orders, and recognizing a defendant's "a constitutional right to be present when [the defendant] is sentenced"). But those precedents recognize that the rule applies only up to the point at which a defendant begins serving that sentence. *See Diaz*, 1983-NMSC-090, ¶¶ 5-6 (holding that the district court had the authority to resentence the defendant because the defendant had not yet served any portion of the original, oral sentence); *Soutar*, 2012-NMCA-024, ¶¶ 13-15 (holding that the defendant did not have a reasonable expectation of finality in an oral sentence where the district court's revocation of the defendant's plea agreement was justified by the defendant's failure to abide by its terms and the defendant's appellate argument that he had begun serving his sentence was baseless); *State v. Rushing*, 1985-NMCA-091, ¶¶ 5, 10, 103 N.M. 333, 706 P.2d 875 (holding that double jeopardy principles did not prevent resentencing in part because the defendant had made misrepresentations at the original sentencing and in part because the defendant had not commenced serving the original, oral sentence).
[3]We note that, although Defendant's motion was styled a motion to reconsider sentence, the contents of the motion pertain only to the question of whether the double jeopardy bar against multiple convictions and punishments for the same offense precluded convicting Defendant of both vehicular homicide and aggravated DWI and sentencing him for both offenses. Based on its substance, we believe the motion is best understood exclusively as a request to vacate Defendant's conviction for aggravated DWI and his sentence for that crime. *See State v. Roybal*, 2006-NMCA-043, ¶ 17, 139 N.M. 341, 132 P.3d 598 ("[I]t is the substance of the motion, and not its form or label, that controls.").
Insofar as the State's argument is that the filing of the motion signals that the sentence was interlocutory, *see State v. Romero*, 2014-NMCA-063, ¶¶ 5, 8, 327 P.3d 525 (explaining that a defendant's timely postjudgment motion for reconsideration of sentence under Rule 5-801 NMRA suspends the finality of the judgment for the purposes of appeal), we reiterate that the reasonableness of a defendant's expectation of finality in a sentence is not dependent on the entry of a written final judgment. *Porras*, 1999-NMCA-016, ¶ 14. As we will explain, it is perfectly reasonable for a defendant who has begun serving a prison sentence and who moves under Rule 5-801 for a purely discretionary reduction of that sentence to expect

relies on the dubious premise that when defendants ask trial courts to *decrease* their sentences, they must reasonably expect that the courts might *increase* their sentences. This defies common sense and, as we will explain, is inconsistent with New Mexico law.

**{23}** The only avenue available for a discretionary reconsideration of sentence following the April 3 sentencing was Rule 5-801,[4] regarding motions for reduction of sentence, and its availability did not prevent Defendant from forming a reasonable expectation of finality because the Rule's plain language and history demonstrate that it only permits sentencing courts to reduce a defendant's sentence. In construing a rule of criminal procedure, our appellate courts employ "the same rules of construction [as those] applicable to the interpretation of statutes." *State v. Aslin*, 2020-NMSC-004, ¶ 9, 457 P.3d 249 (internal quotation marks and citation omitted). We examine "the plain language of the rule as well as the context in which it was promulgated, including the history of the rule and [its] object and purpose." *Id.* (internal quotation marks and citation omitted). The plain language of Rule 5-801 is clear as to the scope of authority it confers. The applicable part of the Rule, Subsection A, discusses only "[a] motion to reduce a sentence" and, fittingly, is entitled "[r]eduction of sentence." We see nothing in the Rule stating or implying that a district court has the authority to increase a sentence upon the filing of a motion to reduce the sentence.

**{24}** The history of Rule 5-801 confirms that its plain language means what it says. This Court discussed that history in *State v. Torres*, 2012-NMCA-026, 272 P.3d 689, which involved a prior version of the rule, Rule 5-801(A) (1989). *Torres*, 2012-NMCA-026, ¶ 13. In *Torres*, this Court recognized that, with the 1989 amendment to Rule 5-801, New Mexico abolished a common-law principle that gave sentencing courts inherent authority to correct illegal sentences. *Torres*, 2012-NMCA-026, ¶¶ 13-15, 17, 37-38.[5] This Court explained that the evolution of Rule 5-801 has "closely tracked" that of Federal Rule of Criminal Procedure 35, which, in the interest of "mak[ing] prisoner release dates more certain and sentences imposed in the public forum more final," Congress amended it in 1984 specifically "to remove any historical common law jurisdiction the federal district courts once enjoyed with respect to correction of illegal sentences." *Torres*, 2012-NMCA-026, ¶¶ 17-27. New Mexico has "[f]ollow[ed] the federal lead," *id.* ¶ 20, by "continually narrow[ing] the scope of Rule 5-801." *Torres*, 2012-NMCA-026, ¶ 27.

---

the district court to take one of only two actions on the motion: (1) grant the motion and reduce the sentence, or (2) deny the motion, leaving the original sentence in place.

4We are aware of one circumstance under which a district court *must* modify its sentence regardless of the defendant's expectations: where the habitual offender statutes require an increase to the sentence. *See* NMSA 1978, §§ 31-18-19 (1977), 31-18-20 (1983); *State v. Diaz*, 2007-NMCA-026, ¶ 11, 141 N.M. 223, 153 P.3d 57. But that circumstance is not present here because the district court imposed the habitual-offender enhancement at Defendant's original sentencing. And, in any event, it is clear under our precedent that a defendant may have a reasonable expectation of finality in an underlying sentence regardless of the possibility of later habitual-offender enhancement. *Porras*, 1999-NMCA-016, ¶ 13.

5This case does not present a question about the district court's authority to correct an illegal sentence. The State does not argue, and we are aware of no basis for concluding, that the district court increased Defendant's original sentence to correct any illegality.

**{25}** The narrowing has continued since *Torres*. Our Supreme Court amended the Rule again in 2014, upon the recommendations of a committee it had appointed to review various rules of criminal procedure. *See* Supreme Court Order No. 14-8300-014 (Nov. 1, 2014). *See generally* Max Minzner, *Habeas Corpus in New Mexico*, 46 N.M. L. Rev. 43 (2016). The amendment to Rule 5-801 further narrowed the scope of the rule to "motions where the defendant seeks a discretionary reduction in sentence from the district court judge." Minzner, *supra*, at 65. Prior to the 2014 amendment, Rule 5-801(A) (2009) permitted sentencing courts to "correct a sentence imposed in an illegal manner" within ninety days of the imposition of sentence. The current version, as amended, only permits motions "to reduce a sentence." Rule 5-801(A). The change reflects a deliberate effort to remove any ambiguity regarding whether Rule 5-801 permits motions to correct illegal sentences, Minzner, *supra*, at 64-65, which, since 1989, it has not. *Torres*, 2012-NMCA-026, ¶¶ 13, 17. The Rule's plain language and history thus demonstrate that Rule 5-801 does not authorize a sentencing court to *increase* a sentence on a defendant's motion to reconsider sentence. Therefore, Defendant's motion requesting his aggravated DWI conviction be vacated on double jeopardy grounds had no bearing on whether he had a reasonable expectation that his actual prison term would be no longer than the ten years imposed at his original sentencing.

**{26}** The State's third argument is that Defendant had not begun serving his sentence because he was incarcerated at the local jail rather than the prison facility where he could expect to serve the greater part of his sentence. We are not persuaded. In our view, Defendant's expectation of finality in his sentence was no less reasonable than that of the defendant in *Porras*—where this Court held that the defendant began serving a ninety-day jail sentence when he was remanded to the local jail, 1999-NMCA-016, ¶ 14—simply because Defendant, though incarcerated pursuant to the original sentence the district court imposed, had not yet been transported from the jail to an NMCD facility.

**{27}** To accept the State's position, we would have to draw two distinctions that we perceive as untethered from the purpose of the double jeopardy principle at issue here. The first distinction is between two defendants who are remanded to the custody of the local jail but who will serve their sentences in different types of facilities. *See generally* NMSA 1978, § 31-20-2(A), (D), (E) (1993) (identifying the circumstances under which a sentence must be served in a facility under NMCD jurisdiction). Under the rule the State proposes, the defendant who is sentenced to serve time in the local jail would have a reasonable expectation of finality upon remand to the local jail, but the defendant who is sentenced to a prison term would not. The second distinction is between two defendants who are remanded to the custody of the local jail and have received sentences that will be served in NMCD facilities but who arrive at those facilities at different times. Under the State's proposed rule, the defendant who is transported to an NMCD facility first would obtain a reasonable expectation of finality upon transport, but the defendant who remains in the local jail awaiting transport to an NMCD facility would have no such expectation. We are aware of no basis in New Mexico law for such distinctions. And we think those distinctions are arbitrary; they are driven not by the reasons for the double jeopardy rule but instead by happenstance. *Where* a particular

defendant happens to be incarcerated when a trial court decides to increase the sentence it has imposed bears no meaningful relationship to whether it is reasonable for that defendant to expect that the sentence is final and will not be increased.

**{28}** We conclude that defendants who have heard the district court impose sentence in open court, in no uncertain terms, and who are then remanded into custody for the purpose of beginning to serve that sentence have a reasonable expectation that their sentences will not be increased, regardless of whether they subsequently request a discretionary reduction to their sentences and regardless of whether they are incarcerated in an institution operating under the authority of NMCD or under the authority of a county or local government. We therefore hold that Defendant began serving the sentence originally imposed by the district court when he was remanded to the custody of the MDC and that, from then on, he had a reasonable expectation that his sentence would not be increased. Because the subsequent imposition of an actual term of imprisonment greater than ten years violated Defendant's right to be free from double jeopardy, Defendant's sentence cannot stand.

**CONCLUSION**

**{29}** We affirm Defendant's conviction but reverse the judgment and sentence and remand for entry of a judgment and sentence consistent with this opinion.

**{30}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**