The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: May 19, 2025

**No. A-1-CA-40775**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**JOHN IRVIN ENSOR,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Dustin K. Hunter, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Eric Orona, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1}    Defendant John Ensor was at the wheel of an SUV when he attempted to pass a vehicle and hit an oncoming car, killing two teenagers. As a result, a jury convicted Defendant for violations of NMSA 1978, Section 66-8-101(A) (2016) (two counts of homicide by vehicle, second degree felonies); NMSA 1978, Section 30-31-23 (2019, amended 2021) (possession of a controlled substance); NMSA 1978, Section 66-7-312 (1978) (improper lane change); and NMSA 1978, Section 66-3-1 (2018, amended 2023) (failure to register). The primary issue on appeal involves the basic sentence for the two homicide by vehicle convictions (second degree felonies) and the interpretation and applicability of recent amendments to NMSA 1978, Section 31-18-15(A) (1977, amended 2024).[1] Defendant maintains that Section 31-18-15 (2022) shows the Legislature's intent to impose an enhanced basic sentence of fifteen years only for second degree felony convictions that result from violations of statutes that use the language "resulting in the death of a human being." We disagree,

---

[1]As we set forth below, the Legislature amended Section 31-18-15 to include the relevant language in 1994 and relevantly amended the provision again in 2003, 2019, and 2022. *See* 1994 N.M. Laws, ch. 23, § 3; 2003 N.M. Laws, 1st Spec. Sess., ch. 1, § 5; 2019 N.M. Laws, ch. 211, § 7; 2022 N.M. Laws, ch. 56, § 29. The most recent amendment, in 2024 is not at issue in this appeal. We therefore refer to the provisions as Section 31-18-15 (1994), the post-2003 amendment as Section 31-18-15 (2003), the statute in effect at the time of the crash as Section 31-18-15 (2019), and the next amended statute as Section 31-18-15 (2022).

based on the longstanding interpretation of the statute, together with the Legislature's intervening amendments. We also conclude that the evidence supported Defendant's conviction for constructive possession of a controlled substance and that he did not establish a prima facie case for ineffective assistance of counsel in this direct appeal. We therefore affirm.

**BACKGROUND**

{2}    On April 4, 2021, Defendant was speeding on a two-lane road. When he attempted to pass a car in front of him, he collided with a third car that was coming from the opposite direction in the other lane. The impact from the head-on collision killed the two occupants in the oncoming car and injured Defendant's leg. Defendant was taken to the hospital, and while there, an officer obtained a blood sample. The results of the blood analysis revealed methamphetamine in Defendant's system. At the scene of the collision, officers collected a syringe containing methamphetamine from the driver's side floorboard of the SUV.

{3}    A jury convicted Defendant for vehicular homicide while under the influence of intoxicating liquor or any drug, possession of a controlled substance, improper passing, and failure to register or title a vehicle. At sentencing, the State recommended an enhanced basic sentence of fifteen years for each homicide by vehicle conviction as well as sentencing enhancements based on prior convictions. Defendant challenged one enhancement and requested that the sentences for the two

homicide by vehicle convictions run concurrently. The district court largely followed the State's recommendation and in relevant part, sentenced Defendant to twenty-three years of incarceration for the first vehicular homicide conviction—consisting of a fifteen-year enhanced basic sentence and an eight-year enhancement—and twenty years for the second homicide by vehicle conviction—a fifteen-year enhanced basic sentence and eight-year enhancement, with three years suspended. The district court ordered that the sentence for the second homicide by vehicle conviction run consecutively with the sentence for the first vehicular homicide conviction. Defendant appeals.

**DISCUSSION**

{4}     On appeal, Defendant challenges the length of the sentences imposed for the two homicide by vehicle convictions, the sufficiency of the evidence supporting the possession of a controlled substance conviction, and the effectiveness of his counsel. We begin with the sentencing issue.

**I.     Defendant's Sentence for the Second Degree Felony of Homicide by Vehicle**

{5}     Defendant's appeal requires us to fit together the statutory method for associating criminal conduct with punishment. The Legislature defines the contours of criminal activity. *See State v. Santillanes*, 2001-NMSC-018, ¶ 30, 130 N.M. 464, 27 P.3d 456 ("The Legislature has created in the Criminal Code a classification system for felonies."). The Criminal Code, NMSA 1978, §§ 30-1-1 to -53-1 (1882,

3

as amended through 2024), establishes (1) classifications for those crimes—whether the crime is a felony, misdemeanor, or petty misdemeanor, *see* § 30-1-5; and (2) the degree for each felony classification, often based on the manner in which the crime was committed, *see* § 30-1-7. Using these terms, the Criminal Code along with other statutory sections define criminal activity. As an example, vehicular homicide is defined by Section 66-8-101(A) as, "the killing of a human being in the unlawful operation of a motor vehicle." Section 66-8-101 continues to set forth different factual circumstances that correlate to different degrees of felony classification. *See, e.g.*, § 66-8-101(C) (establishing that a defendant who commits homicide by vehicle while under the influence of an intoxicating liquor or drug is guilty of a second degree felony).

{6}    For each degree of felony classification, the Legislature establishes corresponding criminal penalties. *See State v. Wilson*, 1982-NMCA-019, ¶ 2, 97 N.M. 534, 641 P.2d 1081 ("The Legislature establishes criminal penalties."). The New Mexico Criminal Sentencing Act provides for the district court's authority in criminal sentencing. NMSA 1978, §§ 31-18-12 to -26 (1977, as amended through 2024). Section 31-18-15 specifically "provides a 'basic sentence' for all noncapital felonies" (the NCF provision). *State v. Lopez*, 2005-NMSC-036, ¶ 31, 138 N.M. 521, 123 P.3d 754, *overruled on other grounds by State v. Frawley*, 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144. At the relevant time in the present case, Section 31-

18-15(A)(4) (2019) provided that "[i]f a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows: . . . for a second degree felony resulting in the death of a human being, fifteen years imprisonment." In 2022, the Legislature amended that provision as follows:

> As used in a statute that establishes a noncapital felony, the following defined felony classifications and associated basic sentences of imprisonment are as follows:
>
> FELONY CLASSIFICATION                    BASIC SENTENCE
>
> . . . .
>
> second degree felony resulting in the        fifteen years
> death of a human being                        imprisonment

Section 31-18-15 (2022). In both the 2019 and 2022 NCF provisions, an ordinary second degree felony carries a nine-year sentence. *See* § 31-18-15(A)(7) (2019); § 31-18-15 (2022). Thus, the NCF provision, in any version, provides a basic sentence for ordinary felony-degree classifications and greater—or enhanced—basic sentences under certain circumstances.

{7}    On appeal, Defendant argues that (1) the Legislature's 2022 amendment "expresses a clear intention to sentence felonies as they are defined in [the] statute" that criminalizes particular activity; and (2) because Section 66-8-101(A) does not use the same language as Section 31-18-15(A)(4) (2019) to define the felony, the district court erred in applying the enhanced basic sentence instead of the ordinary nine-year sentence. Defendant does not argue that the 2022 amendments apply

5

retroactively to his sentence. Instead, Defendant maintains that despite authority to the contrary from New Mexico courts, the limited application of the enhanced basic sentence for which he advocates has been the Legislature's intent since the 1994 amendment to Section 31-18-15. Thus, Defendant contends that the 2022 amendment demonstrates that New Mexico courts have long misinterpreted the NCF provision. Though Defendant did not raise this issue in the district court, the matter implicates the statutory authority of the district court to impose the enhanced basic sentence. As a result, the matter is jurisdictional and can be addressed for the first time on appeal. *See State v. Jensen*, 1998-NMCA-034, ¶ 6, 124 N.M. 726, 955 P.2d 195 (noting that the legality of a sentence is a jurisdictional issue and may be considered for the first time on appeal).

{8}     In order to evaluate how to apply the NCF provision, we interpret the pertinent statutes de novo. *See State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M 102, 163 P.3d 489. Our goal in statutory interpretation "is to give effect to the Legislature's intent." *Id.* We do so by "look[ing at] the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 14, 492 P.3d 586. Additionally, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." *Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6,

436 P.3d 741 (alterations, internal quotation marks, and citation omitted). We assume that the Legislature "is aware of existing law" when it amends a statute. *State v. Morrison*, 1999-NMCA-041, ¶ 11, 127 N.M. 63, 976 P.2d 1015. "We also assume that the [L]egislature intends to change the existing law when it enacts a new statute with substantial rewording." *Id.* We have already set forth the most recent amendments, but the Legislature has amended the NCF provision multiple times. To discern the Legislature's design for the basic sentencing structure, we return to the genesis of the enhanced basic sentence.

**A.      The 1994 Amendment**

{9}      Before the 1994 amendment, the NCF provision was fairly straightforward. In relevant part, the provision stated,

> A.      If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows:
>
> (1)      for a first degree felony, eighteen years imprisonment;
>
> (2)      for a second degree felony, nine years imprisonment;
>
> (3)      for a third degree felony, three years imprisonment; or
>
> (4)      for a fourth degree felony, eighteen months imprisonment.
>
> B.      The appropriate basic sentence of imprisonment shall be imposed upon a person convicted of a first, second, third or fourth degree felony unless the court alters such sentence pursuant to the provisions of Section 31-18-15.1, 31-18-16, 31-18-16.1 or 31-18-17.

Section 31-18-15(A), (B) (1993). In 1994, the Legislature amended the NCF provision to introduce additional felony classifications and associated basic sentences, specifically for second and third degree felonies "resulting in the death of a human being," as well as amendments to Section 31-18-15(B) (1994), as italicized below.

> A.  If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows:
>
> (1)  for a first degree felony, eighteen years imprisonment;
>
> (2)  *for a second degree felony resulting in the death of a human being, fifteen years imprisonment*;
>
> (3)  for a second degree felony, nine years imprisonment;
>
> (4)  *for a third degree felony resulting in the death of a human being, six years imprisonment*;
>
> (5)  for a third degree felony, three years imprisonment; or
>
> (6)  for a fourth degree felony, eighteen months imprisonment.
>
> B.  The appropriate basic sentence of imprisonment shall be imposed upon a person convicted of a first, second, third or fourth degree felony *or a second or third degree felony resulting in the death of a human being*, unless the court alters such sentence pursuant to the provisions of Section 31-18-15.1, 31-18-16, 31-18-16.1 or 31-18-17.

Section 31-18-15(A), (B) (1994) (emphasis added); *see* 1994 N.M. Laws, ch. 23, § 3.

{10}  At the same time, the Legislature amended the felony classifications for second degree murder and third degree voluntary manslaughter. In 1993, the second

8

degree murder felony classification was as follows: "Whoever commits murder in the second degree is guilty of a second degree felony." Section 30-2-1(B) (1993). In 1994, the language was amended as follows: "Whoever commits murder in the second degree is guilty of a second degree felony *resulting in the death of a human being*." 1994 N.M. Laws, ch. 23, § 1(B) (emphasis added). Similarly, in 1993, the felony classification in the voluntary manslaughter statute was, "[w]hoever commits voluntary manslaughter is guilty of a third degree felony." Section 30-2-3(A) (1993). In 1994, the statute was amended to state, "[w]hoever commits voluntary manslaughter is guilty of a third degree felony *resulting in the death of a human being*." 1994 N.M. Laws, ch. 23, § 2(A) (emphasis added). Considering the amendments to all three statutes, this Court noted that the 1994 amendments to the NCF provision "had the effect of closing the large gap between life imprisonment for first degree murder and the then-standard sentence of nine years for second degree murder." *State v. Franco*, 2016-NMCA-074, ¶ 22, 387 P.3d 279 (citation omitted).

{11}     Closing this gap was not the only effect of the 1994 amendment to the NCF provision, as this Court determined in *State v. Shije*, 1998-NMCA-102, 125 N.M. 581, 964 P.2d 142. The *Shije* defendant was charged, in relevant part, with conspiracy to commit murder, and argued that the enhanced basic sentence did not apply because "conspiracy is an initiatory crime resulting solely from an agreement

to commit a crime, the agreement in and of itself could never result in the death of another person." *Id.* ¶¶ 3, 5. This Court rejected this argument, stating that Section 31-18-15(A)(2) (1994) did not require that "the death occur in the commission" of a crime or that the crime "physically cause the death." *Shije*, 1998-NMCA-102, ¶ 6. Instead, this Court held that the language of Section 31-18-15(A)(2) (1994) only required that for the enhanced basic sentence to apply, a defendant be convicted of any second degree felony and that the felony caused the death of a human being. *Shije*, 1998-NMCA-102, ¶ 6.

{12}    After *Shije*, this Court considered whether the enhanced basic sentence applied to a conviction for vehicular homicide. *See State v. Guerro*, 1999-NMCA-026, 126 N.M. 699, 974 P.2d 669. Like Defendant, the *Guerro* defendant argued that "because the vehicular homicide statute does not include the language 'resulting in the death of a human being,' our [L]egislature did not intend to include this crime" within the enhanced basic sentence provision. *Guerro*, 1999-NMCA-026, ¶ 10 (quoting § 31-18-15(A)(4) (1994)). This Court rejected that argument and held that Section 31-18-15 (1994) was "not so limited and is intended to deter any crimes that result in people's death" and therefore concluded that vehicular homicide is "encompassed by the statute." *Guerro*, 1999-NMCA-026, ¶ 11.

**B.    Additional Amendments and Interpretation Before 2022**

{13}    The NCF provision was amended several more times before the 2022 amendment at issue, and each time the Legislature amended the NCF provision, a corresponding amendment was made in tandem to the language of the related criminal statute. The amendment that became effective in 2004 [2] applied the enhanced basic sentence to a second or third degree felony for a sexual offense against a child and in relevant part, amended Section 31-18-15(B) as follows: "[t]he appropriate basic sentence of imprisonment shall be imposed upon a person convicted *and sentenced pursuant to Subsection A of this section*, unless the court alters the sentence pursuant to" other specific criminal sentencing provisions. 2003 N.M. Laws, 1st Spec. Sess., ch. 1, § 5(B) (emphasis added); *see* § 31-18-15(B) (2003). In the same special session, the Legislature amended the statute relating to criminal sexual penetration and included the following additional language: "[w]hoever commits criminal sexual penetration in the second [or third] degree when the victim is a child who is thirteen to eighteen years of age is *guilty of a second [or third] degree felony for a sexual offense against a child*." Section 30-9-

---

[2] Two amendments to the NCF took place in 2003. This opinion refers to the amendment that took place during the 2003 first special session, which was effective February 3, 2004. Similarly, the references to the amendments to the criminal sexual penetration statute and the criminal sexual contact of a minor statute took place during the 2003 first special session and were effective February 3, 2004. Because the amendments took place in the 2003 special session, we use the parenthetical amendment year "2003" for each statutory provision.

11 (2003); *see* 2003 N.M. Laws, 1st Spec. Sess., ch. 1, § 3(D), (E) (emphasis added). *Compare* § 30-9-11(D, (E) (2003), *with* § 30-9-11 (2001). The statute describing the crime of criminal sexual contact of a minor was amended in the same manner. 2003 N.M. Laws, 1st Spec. Sess., ch. 1, § 4. *Compare* § 30-9-13(B), (C) (2003), *with* § 30-9-13(A) (2001).

{14} The Legislature made similar tandem amendments in 2005 and 2016. The 2005 amendments addressed the felony classification for child abuse resulting in death. *See* 2005 N.M. Laws, ch. 59, § 2(A)(1) (including an enhanced basic sentence of "life imprisonment" for the felony classification "first degree felony resulting in the death of a child"). *Compare* 2005 N.M. Laws, ch. 59, § 1, *with* § 30-6-1 (2001) (amending the child abuse statute to include the felony classification identified in Section 31-18-15(A) (2005)). The 2007 amendments related to the felony classification for criminal sexual penetration. *See* 2007 N.M. Laws, ch. 69, § 2. *Compare* 2007 N.M. Laws, ch. 69, § 1, *with* § 30-9-11 (2003). The 2016 amendment to the NCF provision added felony classifications and sentences for the "sexual exploitation of children." 2016 N.M. Laws, ch. 2, § 2; § 31-18-15(A)(1)-(13) (2016). Again, the Legislature at the same time amended the felony classifications within the statute specifically criminalizing the sexual exploitation of children. *Compare* 2016 N.M. Laws, ch. 2, § 1, *with* § 30-6A-3 (2007).

12

{15}     This Court again addressed the enhanced basic sentence in *Franco*, this time in the context of double jeopardy. 2016-NMCA-074, ¶ 1. In *Franco*, the defendant was convicted of shooting at a motor vehicle resulting in death, and the district court imposed the enhanced basic sentence of fifteen years. *Id.* The defendant argued that the conviction and sentence violated double jeopardy protections, because the death of a human being formed the basis for conviction and for the sentence. *Id.* ¶ 17. This Court traced the history of the enhanced basic sentence, *id.* ¶¶ 22-28, and concluded that the "death occurred as a result of [the d]efendant's actions that fit the crime's definition." *Id.* ¶ 32. Therefore, "Section 31-18-15(A)(4)[(2007)] fits the crime committed for sentencing purposes because the crime resulted 'in the death of a human being,'" 2016-NMCA-074, ¶ 32 (quoting § 31-18-15 (2007)). For double jeopardy purposes, "[t]he end result is one crime, punished one time." *Id.*

{16}     In *State v. Chavez*, 2021-NMSC-017, ¶ 54, 485 P.3d 1279, again in the double jeopardy context, our Supreme Court declined to depart from the *Franco* analysis. In *Chavez*, the Court agreed that Section 31-18-15(A)(4) (2019) was "the appropriate basic sentence" when any second degree felony is committed that includes the additional "factual consequence" that the offense resulted in the death of a human being. *Chavez*, 2021-NMSC-017, ¶ 49. *Chavez* and *Franco*, however, were decided prior to the 2022 amendment of the NCF provision.

**C.     The 2022 Amendment and Defendant's Arguments**

13

{17}     Defendant maintains that the history of the amendments—in tandem with amended language in particular criminal statutes—including the 2022 restructuring and amendment, demonstrates that the Legislature always intended to limit the enhanced basic sentence to convictions under those criminal statutes that include the identical felony classification language.

{18}     Defendant's arguments rest on the amended introductory language of the NCF provision, which as we have set forth, now states "[a]s used in a statute that establishes a noncapital felony, the following defined felony classifications and associated basic sentences of imprisonment are as follows" and lists the felony classifications and basic sentences. *See* § 31-18-15(A) (2022). Defendant maintains that the inserted phrase "[a]s used in a statute," demonstrates that the Legislature always intended to limit the enhanced basic sentence to apply to violations of those criminal statutes that have identically-worded felony classifications. Based on well-established principles of statutory construction, we disagree.

{19}     The amended language, "[a]s used in a statute," does not unambiguously exclude crimes that factually result in the death of a human being from the enhanced basic sentence. *See State v. Muller*, 2022-NMCA-024, ¶ 19, 508 P.3d 960 (defining statutory ambiguity as "understood by reasonably well-informed persons in two or more different senses" (internal quotation marks and citation omitted)). The amended language could be read, as Defendant contends—to limit the listed basic

14

sentences to the listed "defined felony classifications." *See* § 31-18-15 (2022). More specifically, the exact language in each felony classification listed in Section 31-18-15 (2022) would need to match the language that is "used in a statute that establishes a noncapital felony." *Id.* From that perspective, unless the statute that establishes the noncapital felony uses the language "second degree felony resulting in the death of a human being," the enhanced basic sentence of fifteen years would not apply. *Id.* Alternatively, the amended language could be read more broadly to mean that in whatever way the felony classifications that are defined in Section 31-18-15 (2022) are "used in a statute that establishes a noncapital felony," the basic sentences are to be imposed as listed. This view of the amended language aligns with the existing common law that has long allowed for the inclusion of specific crimes without the exclusion of other crimes that as a factual matter, demonstrate that the felony resulted in the death of a human being. *See, e.g.*, *State v. Melo-Fernandez*, ___-NMCA-___, ¶ 16, ___ P.3d ___ (A-1-CA-40885, Nov. 21, 2024) (declining to apply the enhanced basic sentence because the felony to which the defendant pleaded did not result in the death of a human being as a factual matter). Because we do not view the 2022 amendment as having "one plain meaning," we turn to "the common law to discern the more likely meaning." *See Muller*, 2022-NMCA-024, ¶¶ 19, 23.

{20}     During the same years that the Legislature synced the language of the NCF provision with specific criminal statutes, courts have interpreted the NCF provision

15

to encompass criminal activities based not on identical felony classification language but on factual predicates. *See Chavez*, 2021-NMSC-017, ¶ 49 (taking "into account the factual consequence of the conduct"); *Franco*, 2016-NMCA-074, ¶ 29 (explaining that the enhanced basic sentence "could reach any crime that in any way led to a death"); *Shije*, 1998-NMCA-102, ¶ 9 (reasoning that the purpose of the NCF provision's enhanced basic sentence was "to prevent crimes that result in people's deaths"). Generally, in our review of statutory amendments, we assume "that the Legislature is well informed and aware of existing statutory and common law." *State v. Thompson*, 2022-NMSC-023, ¶ 18, 521 P.3d 64. Thus, faced with an ambiguous statutory amendment and longstanding judicial interpretation of the provision, we conclude that with the 2022 amendment, the Legislature did not intend to opaquely limit a law that has long been broadly applied. We must presume that the Legislature will use "clear and unequivocal terms" to signify its intent to change existing law. *See Morrison*, 1999-NMCA-041, ¶¶ 11-13 (explaining that changes to tense and punctuation showed intent to clarify, not materially alter, the law); *see also Aguilera v. Bd. of Educ. of Hatch Valley Schs.*, 2006-NMSC-015, ¶ 24, 139 N.M. 330, 132 P.3d 587 ("In the absence of a clear legislative directive to abandon existing law, we continue to apply it."); *cf. Blackwood & Nichols Co. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-113, ¶ 15, 125 N.M. 576, 964 P.2d 137 (holding that the deletion of a provision and rewriting of other provisions materially changed the law).

16

**{21}** With knowledge of the longstanding judicial interpretation of the NCF provision, the Legislature could have explicitly limited the reach of Section 31-18-15 (2022) or clearly expressed its intent to change the application of the NCF provision. *See Aguilera*, 2006-NMSC-015, ¶ 24. But it did not do so. Nor did it do so in any of the multiple amendments to the statute after the *Shije* Court set the course for judicial interpretation of the NCF provision. *See* 1998-NMCA-102, ¶ 9. Therefore, while the Legislature intended to specifically include particular criminal statutes within the NCF provision's enhanced basic sentence—those that were amended in tandem—the Legislature, presumably aware of the common law interpretation of the NCF provision and despite engaging in many amendments of the statute, did not limit application of the enhanced basic sentence to specific crimes. As a result, because Defendant's convictions for vehicular homicide were second degree felonies that each factually resulted in the death of human beings, the district court had jurisdiction to impose the enhanced basic sentence.

## II. Sufficiency of the Evidence to Support Constructive Possession

**{22}** Defendant next argues that insufficient evidence supported the conviction for possession of methamphetamine. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal

quotation marks and citation omitted). This Court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). The jury is not required to accept a defendant's version of the facts. *Id.* For that reason, we review "the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (emphasis, internal quotation marks, and citation omitted). In order to consider whether the essential facts support a conviction, we first turn to the jury instructions, which "become the law of the case against which the sufficiency of the evidence is to be measured." *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

{23}   In the present case the jury, in relevant part, was instructed:

> For you to find [D]efendant guilty of possession of methamphetamine . . . the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant had methamphetamine in his possession;
>
> 2. [D]efendant knew it was methamphetamine.

*See* UJI 14-3102 NMRA; *see also State v. Morales*, 2002-NMCA-052, ¶ 29, 132 N.M. 146, 45 P.3d 406 ("When a conviction is based on constructive rather than actual possession, this Court must be able to articulate a reasonable analysis that the

18

jury might have used to determine knowledge and control."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The jury was additionally instructed on constructive possession:

> A person is in possession of methamphetamine when he knows it is on his person or in his presence, and he exercises control over it.
>
> Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.
>
> A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

*See* UJI 14-3130 NMRA; *see also State v. Phillips*, 2000-NMCA-028, ¶ 8, 128 N.M. 777, 999 P.2d 421 (providing that "the mere presence of the contraband is not enough to support an inference of constructive possession"). Defendant contends that the evidence showed only that the syringe was in his presence and no more. We conclude to the contrary that a "fair inference from the evidence, [was] sufficient to establish constructive possession." *See Morales*, 2002-NMCA-052, ¶ 28.

{24}     The jury could reasonably have determined that Defendant knew about and controlled the syringe in the SUV. *See id.* ¶ 29. The jury heard testimony that Defendant was the only one in the SUV and was driving at the time of the crash. After the crash, law enforcement found the syringe in the SUV on the driver's side floorboard, and the syringe contained a substance that was later determined to be methamphetamine. Defendant admitted to "having" methamphetamine earlier on the

19

day of the crash, and the postcrash blood test confirmed methamphetamine in his system. From this evidence, the jury could reasonably infer that Defendant had constructive possession of the methamphetamine in the syringe.

{25}     Defendant challenges this conclusion on three bases. Defendant argues that the State did not establish that Defendant exercised control over the syringe because (1) Defendant's girlfriend had been in the SUV that day and female DNA was found on the syringe, which could indicate that Defendant did not exercise exclusive control over the items in the SUV; (2) no reasonable inference could be drawn from the syringe's location because of the violent nature of the crash, which Defendant argued "dislodged every loose object in the SUV"; and (3) no forensic evidence established that Defendant "exercised control of the syringe by using it to inject methamphetamine." The State, however, was not required to prove that Defendant used the syringe—only that evidence existed to support an inference that he had knowledge of and control over it. *See* UJI 14-3106 NMRA. The jury heard the evidence about the DNA and the violence of the crash, as well as argument from Defendant on these subjects, and nevertheless concluded that Defendant exercised control over the syringe. *See State v. Garcia*, 2022-NMCA-008, ¶ 9, 504 P.3d 567 ("We do not reweigh the evidence or substitute our judgment for that of the fact-finder as long as there is sufficient evidence to support the verdict." (alteration, internal quotation marks, and citation omitted)).

{26} "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548. Viewing the evidence in the light most favorable to the verdict, we conclude that the State presented sufficient evidence at trial to support the jury's reasonable inference that Defendant had knowledge and control of the methamphetamine and the essential facts required for a rational jury to convict Defendant of constructive possession of methamphetamine. *See Morales*, 2002-NMCA-052, ¶ 29.

## III.    Ineffective Assistance of Counsel

{27}    Defendant last argues that he received ineffective assistance of counsel. A criminal defendant has the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. *State v. Miera*, 2018-NMCA-020, ¶ 30, 413 P.3d 491. We review claims of ineffective assistance of counsel de novo. *See State v. Howl*, 2016-NMCA-084, ¶ 9, 381 P.3d 684. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 (internal quotation marks and citation omitted).

**{28}** Two elements are necessary to establish a prima facie case of ineffective assistance of counsel. Defendant must demonstrate that "counsel's performance fell below that of a reasonably competent attorney" by showing that "no plausible, rational strategy or tactic explains counsel's conduct." *See Miera*, 2018-NMCA-020, ¶ 30 (internal quotation marks and citation omitted). We strongly presume "that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). Defendant must also show that "due to the deficient performance, the defense was prejudiced." *See Howl*, 2016-NMCA-084, ¶ 10 (internal quotation marks and citation omitted). The defense is prejudiced when there is a "reasonable probability that but for the attorney's objectively unreasonable conduct, the result of the proceedings would have been different." *State v. Morgan*, 2016-NMCA-089, ¶ 15, 382 P.3d 981 (internal quotation marks and citation omitted). Counsel's conduct "must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *State v. Roybal*, 2002-NMSC-027, ¶ 25, 132 N.M. 657, 54 P.3d 61. Defendant argues that trial counsel (1) before trial, did not discuss whether Defendant would testify or explain habitual offender sentence enhancements to Defendant; and (2) at trial, did not object to certain expert testimony. For the reasons

22

that follow, Defendant does not make a prima facie case on direct appeal for these claims.

{29}     Assuming without deciding that defense counsel's performance was deficient because she waited until trial to discuss the right to testify with Defendant, no prejudice has been demonstrated. At trial, the district court gave Defendant the opportunity to discuss the choice to testify with counsel. After confirming that he had the time "needed" to discuss his decision with trial counsel, Defendant reaffirmed his decision to not testify. Defendant does not show how a pretrial discussion of the decision to testify would have changed the results of the proceeding. *See Morgan*, 2016-NMCA-089, ¶ 15 (describing the standard to establish prejudice).

{30}     Similarly, on this record, Defendant does not demonstrate prejudice resulting from the timing of defense counsel's explanation and advice about habitual offender enhancements. At the sentencing hearing, defense counsel asked for—and received—time to discuss and advise Defendant about the supplemental criminal information regarding the habitual offender sentence enhancements that the State had filed that morning. After that, Defendant confirmed that he had a chance to discuss this information with trial counsel, did not ask for a continuance due to the late disclosure from the State, and admitted the prior convictions. Again, assuming but not deciding that defense counsel's conduct fell below that of a reasonably

competent attorney, Defendant does not show that the results of any proceeding would have been different but for defense counsel's actions and therefore cannot establish prejudice. *See id.*

{31} Last, Defendant contends that trial counsel was ineffective for failing to object to the testimony of one of the State's experts, who Defendant contends engaged in "vouching and bolstering" that "went to the ultimate issue in the case." At trial, the expert testified that Defendant was impaired and it was unsafe for him to drive at the time of the accident, based on "the raw data," his "independent conclusions" about the amount of methamphetamine in Defendant's system, his "education on these topics," and the evidence from "the crash reconstruction and situation of the crash." Defendant does not challenge the admissibility of the expert's testimony or explain why defense counsel's decision to not object either fell below the standard of a reasonably competent attorney or fell outside the realm of trial strategy. *See State v. Hester*, 1999-NMSC-020, ¶ 15, 127 N.M. 218, 979 P.2d 729 ("Decisions regarding objections are matters of trial tactics which do not necessarily equate to ineffective assistance of counsel."); *State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162 ("[W]e will not second-guess counsel's trial strategy."). We therefore conclude that defendant did not make a prima facie showing in this direct appeal that counsel's performance was unreasonable and fell below an objective standard. *See Gonzales*, 2007-NMSC-059, ¶ 14 ("The presumption of effective assistance will

24

remain intact as long as there is a reasonable trial tactic explaining counsel's performance.").

**{32}** On the three allegations of ineffective assistance of counsel, Defendant did not establish either prejudice or deficient performance. *See Miera*, 2018-NMCA-020, ¶ 30. As a result, Defendant does not make a prima facie case of ineffective assistance of counsel. Nevertheless, Defendant "can still pursue habeas proceedings on [these] issue[s]." *See Gonzales*, 2007-NMSC-059, ¶ 16.

**CONCLUSION**

**{33}** We affirm.

**{34}** **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**SHAMMARA H. HENDERSON, Judge**

25